**DYNAMIC PUBLISHING & DISTRIBUTING L.L.C. and Axiom Entertainment, Inc., Appellants,**

**v.**

**UNITEC INDUSTRIAL CENTER PROPERTY OWNERS ASSOCIATION, INC., and Royal Joint Venture, Appellees.**

No. 04–04–00132–CV.

Court of Appeals of Texas, San Antonio.

Feb. 16, 2005.

Order Substituting Judgment May 18, 2005.

Ellen B. Mitchell, Cox Smith Matthews Incorporated, San Antonio, for appellants.

Edward F. Maddox, Person, Whitworth, Borchers & Morales, L.L.P., Laredo, Charles H. Sierra, William M. McKamie, Law Offices of William M. McKamie, P.C., San Antonio, for appellees.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from a summary judgment in favor of appellees, Unitec Industrial Center Property Owners Association, Inc. and Royal Joint Venture. In the underlying lawsuit, appellees sued appellants, Dynamic Publishing & Distributing LLC and Axiom Entertainment, Inc., for enforcement of a restrictive covenant. We affirm.

## BACKGROUND

Royal Joint Venture is the developer of and one of the property owners in the Unitec Industrial Center. Unitec Industrial Center Property Owners Association, Inc. ("Unitec") is a non-profit corporation formed to serve the industrial center property owners. Dynamic Publishing & Distributing LLC ("Dynamic") is also a property owner, and Axiom Entertainment, Inc. is its tenant (Dynamic and Axiom will be referred to collectively as "Dynamic"). Axiom operates an adult entertainment business in the industrial center.

At the time Royal developed the industrial center, the center lay outside the Laredo City limits. Royal and the City entered into a Water Supply and Controlled Development Contract whereby the City agreed to supply water to the center and Royal agreed the center would be used only for "industrial purposes" as that term is defined in Laredo City Ordinance No. 87–0–163 and any future amendments to the ordinance. The contract required Royal to include restrictive covenants in deeds conveying property within the industrial center. The center's Covenants, Conditions, and Restrictions were recorded in the Webb County real property records. The covenants are intended to run with the land and for the benefit of the property and all property owners, and the covenants are enforceable by the developer or any property owner.

The introduction to the covenants contains a declaration stating it is "in the best interest of said owner [Royal], and all of the persons, corporations or other entities

who might purchase part of the property in the future, that there be established and maintained a uniform plan for the improvement and development of the land covered hereby as a restricted subdivision[.]" Included in the covenants is a "use restriction," which states as follows:

> (a) *Industrial Purposes:* No lot of the subject subdivision shall be used except for "industrial purposes" as hereinafter defined.
>
> The subject land is subject to the terms and conditions of Ordinance No. 87–0–163, dated December 8, 1987. In the event of conflict between any provision of the aforesaid Water Supply and Controlled Development Contract and said Ordinance, then said Ordinance shall control. Provided that in the event that "industrial purposes" under said Ordinance No. 87–0–163 is enlarged by subsequent amendment, then in such event the enlarged meaning shall control. "Industrial purposes" as used herein shall have the same meaning as "industrial purposes" in Ordinance No. 87–0–163.

Ordinance No. 87–0–163 provides that the City will not provide water service to or for future developments outside its limits "save and except in the case of any development for industrial purposes...." The current version of the ordinance defines "industrial purposes" as follows:

> [A]ny and all use or uses of land, first allowed in those Districts which are M1, and M2, under the Zoning Ordinance of the City of Laredo, and for clarification, those uses which are so allowed within the meaning of the phrase "industrial purposes" are specified herein:

[twenty-five specific uses are listed [1]]

The City annexed the industrial center in 1997 and 1998, and it was zoned M2. Dynamic obtained a special use permit from the City allowing it to operate an adult entertainment business on its Unitec premises.

Unitec and Royal sued Dynamic and the City seeking (1) a declaration of whether and to what extent (a) Dynamic's use of the property violated the deed restrictions, (b) the restrictions contained in the Water Supply and Controlled Development Contract remained in force following annexation, and (c) the Water Supply and Controlled Development Contract limits Dynamic's use of the property to industrial purposes; and (2) a permanent injunction enjoining Dynamic from operating an adult bookstore; exhibiting, promoting or permitting live nude dancing; serving and permitting the consumption of alcoholic beverages; and any other use prohibited by the restrictions. Unitec and Royal filed a motion for summary judgment, in which they requested that the trial court (1) declare Dynamic's operation of an adult bookstore prohibited by the restrictive covenants, (2) permanently enjoin Dynamic from operating an adult bookstore featuring live nude dancing within the industrial center for the duration of the restrictive covenants, and (3) grant them attorney's fees. The trial court denied the motion.

Unitec and Royal then filed a second motion for summary judgment, in which they asked the court to reconsider its denial of their first motion for partial summary judgment. The trial court vacated its first order and rendered judgment that (1) the covenants survived annexation and limited

---

1. For example, among the listed purposes are bulk storage of building materials; wholesale facilities serving retail laundry or dry cleaning establishments; and parking lots for the storage of trailers and semi-trailers.

the use of the industrial center property to "industrial purposes" only as set forth in Ordinance 87–0–163 (and its amended form Ordinance 93–0–126), and (2) a sexually oriented business and a business selling, distributing, and displaying adult books, magazines, and movies or featuring live nude dancing is not permitted on the center's property. The trial court issued the permanent injunction requested by Unitec and Royal and awarded Unitec and Royal $30,000 in attorney's fees.

Dynamic now appeals. Dynamic states the primary issue as follows: because the restrictive covenant adopts the ordinance's definition of "industrial proposes," did Unitec and Royal establish, as a matter of law, that the operation of an adult bookstore is not an "industrial purpose"? Dynamic also challenges the trial court's award of attorney's fees to Unitec and Royal.

## STANDARD OF REVIEW

We review the trial court's granting or denial of a motion for summary judgment under the appropriate standard of review. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). The propriety of summary judgment is a question of law; therefore, we review the trial court's decision de novo. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994).

■■■ Restrictive covenants are subject to the same rules of construction and interpretation as contracts. *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). For a court to be able to construe a contract as a matter of law, the contract must be unambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). Although the parties assert contrary interpretations, mere disagreement over the interpretation of a provision does not make

it ambiguous. *Hodas v. Scenic Oaks Prop. Ass'n,* 21 S.W.3d 524, 528 (Tex.App.-San Antonio 2000, pet. denied). Whether an instrument is ambiguous is a question of law that must be decided by reviewing the covenant as a whole in light of the circumstances present when the covenant was entered. *Pilarcik,* 966 S.W.2d at 478. If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *See National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent. *See Columbia Gas,* 940 S.W.2d at 589. Accordingly, if the restrictive covenant here is ambiguous, the trial court erred in granting the summary judgment because the interpretation of ambiguous contracts is a question of fact for a jury. *Coker,* 650 S.W.2d at 394.

■■■ The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *See National Union,* 907 S.W.2d at 520. In determining this intent, the court must liberally construe the covenant's language to give effect to its purposes and intent. TEX. PROP. CODE ANN. § 202.003(a) (Vernon 1995). Instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the instruments were executed at different times and do not expressly refer to each other, and a court may determine as a matter of law that multiple documents comprise a single written contract and construe them accordingly. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000).

## INDUSTRIAL PURPOSES

In its first issue, Dynamic asserts Royal and Unitec did not establish as a matter of law that its use of the property was not an "industrial purpose."

Unitec and Royal assert that "industrial purposes" has only one meaning and that meaning is clarified by the purposes listed in the ordinance. Dynamic, on the other hand, asserts the definition of "industrial purposes" encompasses two categories: (1) "any and all use or uses of land, first allowed in those Districts which are M1, and M2, under the Zoning Ordinance of the City of Laredo" and (2) those purposes specifically listed in the ordinance. Dynamic relies on the statutory-construction principle of ejusdem generis to argue that a reasonable interpretation of the restrictive covenant is that "industrial purposes" encompasses all uses of land permitted under M1 and M2 zoning. In other words, Dynamic argues that the purposes are listed in the ordinance merely as examples of the possible permitted uses and are provided to give guidance and to prevent confusion. Alternatively, Dynamic argues that the phrase "first allowed" encompasses those uses that were permitted under M1 and M2 when those zoning districts were first created. Under either interpretation, Dynamic contends the word "allowed" includes uses that require a special permit, as well as those that do not. Dynamic concludes that its use is "allowed" and whether it is "first allowed" depends on the uses permitted when the M1 and M2 districts were created.

The principle of ejusdem generis [2] applies only when a contract is ambiguous. *Hussong v. Schwan's Sales Enters., Inc.,* 896 S.W.2d 320, 325 (Tex.App.-

Houston [1st Dist.] 1995, no writ) *see also Dimotsis v. State Farm Lloyds,* 5 S.W.3d 808, 811–12 (Tex.App.-San Antonio 1999, no pet.) (Rickhoff, J., concurring). It does not apply when the parties' intent is apparent. *Hussong,* 896 S.W.2d at 325. We conclude that the term "industrial purpose" as defined in the City of Laredo's ordinance is not ambiguous; therefore, we need not apply ejusdem generis to this case. *See id.*

Unitec's restrictive covenant adopts its use of the term "industrial purpose" from the City of Laredo's ordinance and any amendments to the ordinance that enlarged the meaning of the term. The ordinance refers to the Zoning Ordinance of the City of Laredo contained in the Laredo Land Development Code. The Code states that the purpose of the M1 and M2 zoning districts is as follows:

The purpose of the M–1 Light Manufacturing District is to encourage the development of manufacturing and wholesale business establishments which are clean, quiet, and free of hazardous or objectionable elements such as noise, odor, dust, smoke or glare. Research activities are encouraged. This district is further designed to act as a transitional use between heavy industrial uses and other less intense and residential uses.

The purpose of the M–2 Heavy Manufacturing District is to provide areas for manufacturing, processing, assembling, storing, testing and industrial uses which are extensive in character, and require large sites, open storage and service areas, extensive services and facilities, ready access to regional transportation; and which may be incompati-

---

**2.** "[W]hen words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restrict-

ed to the particular designation." *Hilco Elec. Coop. v. Midlothian Butane Gas Co.,* 111 S.W.3d 75, 81 (Tex.2003).

ble with less intensive uses by reason of traffic, noise, vibration, dust, glare, or emissions.

The Code also provides that any property owner who desires to establish a use on land that is not specifically zoned for that use may apply for a special use permit. Special use permits are authorized for sexually oriented businesses. An adult bookstore may be operated on land zoned as M1 or M2 if a special permit is first obtained.

The purposes listed in the ordinance "for clarification" are consistent with the purpose of the M1 and M2 districts. They include: (1) storage facilities; (2) wholesale facilities; (3) cold storage plants, brewery, dairy processing, ice plants; (4) freight and truck terminals and railroad yards; (5) contractors yards for prefabrication and storage of construction equipment and materials; (6) administrative, engineering and scientific research; (7) manufacturing, compounding, processing, packaging or treatment of such items as food products, cosmetics, and pharmaceutical products; (8) manufacturing or processing of small items, including gloves, footwear and textile products; (9) assembling of items such as appliances, radios, and light metal products; (10) custom house brokers and freight forwarders; (11) parking lots for storage of trailers and semi-trailers; (12) essential services, and public service, facilities; (13) detention facilities; (14) acid, asbestos, automobile, truck, and heavy equipment assembly; (15) bleaching, cleaning and dye plants, boiler shops, metal working shops; (16) dextrine, starch, glucose, poison and insecticide manufacturing, grain mills, and stock yards; (17) heat packing, stock yards or slaughter house; (18) poultry processing; (19) sandblasting and cutting; and (20) junk and used appliance yard. Subsequent amendments to the ordinance added specific additional purposes.

Each time the ordinance was amended, the amended ordinance began with an opening paragraph indicating the addition of a new industrial purpose. The first amendment to ordinance 87–0–163 stated: "Amending Ordinance 87–0–163 ... to add to the definitions of 'industrial uses' in section 3 thereof that of communications antennae, and providing for incidental uses of vehicle maintenance and/or truck stop facilities...." The next amendment stated: "Amending Ordinance 87–0–163 ..., as amended by Ordinance 90–0–11 ... to provide that retail and/or wholesale business may be permitted in conjunction with an industrial use as defined in section 3(1) of said ordinance...." The next amendment stated: "Amending Ordinance 87–0–163 ..., as amended by Ordinances 90–0–11 & 90–0–239, to add to the list of industrial purposes in section 3, item (24) petroleum products terminal business...." And, the most recent amendment stated: "Amending Ordinance 87–0–163 ..., as amended by Ordinances 90–0–11, 90–0–239, and 91–0–172, to add to the list of 'industrial purposes' in section 3, item (25); glass or plastic related products...." Each amendment also stated the reason for the amendment in language substantially similar to the following:

Whereas on December 8, 1987, the City Council enacted an ordinance providing that there shall be no water service outside the city limits, except for properties which are developed for industrial uses as defined in said ordinance .... [and] the City Council has been requested to add to the list of "industrial uses" as defined in said ordinance [the additional purpose] [and] the City Council finds that such additional definition of industrial use and that such incidental uses will advance the purpose and intent of said ordinance which was

designed to facilitate the development of land for industrial uses.

When ordinance 87–0–163 and each amending ordinance are read in their entirety, it is clear that the purposes listed in the ordinance are more than mere examples. Instead, the listed purposes are meant to define the use of the term "industrial purpose" in the ordinance and to limit the use of any development to only those enumerated purposes.

The restrictive covenant limits its definition of the term "industrial purposes" to that term as defined in the ordinance or any future amendment. This result satisfies the purpose of the covenants, which is to maintain a "uniform plan for the improvement and development of the land. . . ."

For these reasons, we conclude the trial court did not err in granting summary judgment in Royal and Unitec's favor limiting the use of the industrial center property to only those "industrial purposes" set forth in Ordinance 87–0–163 and its amendments. Therefore, we do not reach Dynamic's fifth[3] or sixth[4] issues, and instead, we next determine whether the trial court granted more relief than was requested in the motion for summary judgment.

### REQUESTED RELIEF

■ In its second issue, Dynamic asserts the trial court's judgment purports to determine whether and to what extent the covenants remained in force following annexation by the City, even though such relief was not requested in Royal and Unitec's motion for summary judgment.

■ "A judgment that grants more relief than a party is entitled to is subject to reversal. . . ." *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 200 (Tex.2001). In Royal and Unitec's first motion for summary judgment, they included the following statement:

The framers of the Contract and the Unitec Restrictive Covenants contemplated annexation when drafting, and they made no provision for automatic termination or modification of the restrictive covenants within Unitec upon annexation. On the contrary, Paragraph 13 of the Contract expressly provides, **"in the event of annexation of any part of the subject property, Royal, may from time to time, elect to withdraw any unplatted or annexed portion or portions of said tract, from the terms of this contract."** . . . All of Unitec has been annexed. . . . As such, the Contract continues to be in force and continues to require the restrictive covenants. The framers unambiguously intended to preserve the land use restrictions after annexation to ensure compatible land use and protect landowners.

Additionally the conduct of Royal, an original party to the contract, has clearly demonstrated that the terms of the Unitec Restrictive Covenants are intended to continue in force after annexation. . . .

(Emphasis in original.) In their prayer for relief, Royal and Unitec asked for "declaratory relief that [Dynamic's] operation of an adult bookstore is prohibited by the Unitec Restrictive Covenants applicable to any property located within the Unitec

---

**3.** In its fifth issue, Dynamic asserts Unitec and Royal did not establish their entitlement to injunctive relief because they did not establish that Dynamic's use of the property was a "wrongful act."

**4.** In its sixth issue, Dynamic asserts Royal and Unitec are not entitled to attorney's fees if we determine they did not prevail at trial.

Industrial Center." Royal and Unitec also asked that Dynamic be permanently enjoined from operating an adult bookstore featuring live nude dancing within the center "for the duration of the Unitec Restrictive Covenants...." Royal and Unitec's second motion for summary judgment reurged and incorporated by reference its grounds, arguments, authority, and evidence from the first motion and requested the relief stated in the first motion for summary judgment.

We conclude Royal and Unitec's motions for summary judgment asked the court to determine whether and to what extent the covenants remained in force following annexation by the City; therefore, the trial court did not err in reaching that issue.

### AFFIRMATIVE DEFENSES

█ In its third issue, Dynamic asserts the covenant cannot be enforced against it because the covenant lacks mutuality of obligation. In its fourth issue, Dynamic asserts the restrictive covenant is unenforceable because a change in condition has defeated its purpose.

█ Lack of mutuality and change in conditions are affirmative defenses that must be specifically pled and proved to be available as a defense. *See* TEX.R. CIV. P. 94; *Copeland Well Serv., Inc. v. Shell Oil Co.*, 528 S.W.2d 317, 321 (Tex.Civ.App.-Tyler, 1975, writ dism'd) (lack of mutuality); *Homsey v. University Gardens Racquet Club*, 730 S.W.2d 763, 765 (Tex.App.-El Paso 1987, writ ref'd n.r.e.) (change in conditions). Here, Dynamic did not plead lack of mutuality and change in conditions as affirmative defenses in its answer,[5] nor did it raise these defenses in response to Royal and Unitec's motion for summary judgment. Therefore, Dynamic may not

rely, for the first time on appeal, on these affirmative defenses to defeat Royal and Unitec's entitlement to summary judgment. TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or response shall not be considered on appeal as grounds for reversal.").

### CONCLUSION

We affirm the trial court's judgment.

### MEMORANDUM OPINION

### PER CURIAM.

In an opinion and judgment dated February 16, 2005, we affirmed the trial court's judgment in favor of appellees. On March 3, 2005, appellants filed (1) a Motion for Judicial Notice and (2) a Motion for Rehearing. On April 26, 2005, the parties filed an Agreed Motion to Reverse and Remand, stating that the parties have fully resolved and settled all issues in dispute. The parties request that the trial court's judgment be reversed, the cause be remanded for the entry of an agreed order dismissing all claims with prejudice in accordance with the parties' settlement agreement, that this court's opinion of February 16, 2005 be withdrawn, and that this court issue mandate as soon as possible.

The Motion for Judicial Notice and the Motion for Rehearing are denied as moot. The Agreed Motion to Reverse and Remand is granted in part. The judgment of the trial court is reversed, and the cause is remanded for the entry of a judgment in conformity with the settlement agreement. TEX.R.APP. P. 42.1(a)(2). We grant the parties' request to withdraw our judgment

---

5. The only affirmative defenses raised by Dynamic in its answer were waiver, laches, and estoppel. However, Dynamic did not raise these defenses in response to the motion for summary judgment, nor does Dynamic raise these defenses on appeal.

of February 16, 2005, and we substitute *this judgment* in its place. However, we deny the parties' request that our opinion of February 16, 2005 be withdrawn. *See* TEX.R. APP. P. 42.1(c). The Clerk of this court is ordered to issue mandate contemporaneously with this opinion and judgment.