# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00067-CV

**Cedar Oak Mesa, Inc., Appellant**

**v.**

**Altemate Real Estate, LLC, Appellee**

FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
NO. 09-0886, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Cedar Oak Mesa, Inc. ("Cedar Oak"), a property owners' association, filed suit against one of its residents, appellee Altemate Real Estate, LLC ("Altemate"), to prevent Altemate from operating a short-term, vacation-rental property within the Campfire No. 2 Subdivision in Hays County ("the Subdivision"). Cedar Oak asserted that the renting of property within the Subdivision for periods of less than six months constituted "commercial activity" prohibited by the Subdivision's restrictive covenants and Bylaws. The parties filed cross-motions for summary judgment. The trial court, finding that Altemate's use of the property was not restricted, granted Altemate's no-evidence motion for summary judgment and denied Cedar Oak's summary-judgment motion. Cedar Oak appeals, arguing that it was entitled to summary judgment because the restrictions at issue unambiguously prohibit the type of commercial activity in which

Altemate is engaged. We will reverse the judgment of the trial court and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are largely undisputed. Cedar Oak is a non-profit corporation established for the purpose of administering and enforcing deed restrictions for a portion of the Subdivision. In 2007, Altemate purchased property in the Subdivision. Altemate's property is improved with a log cabin, which it rents on a temporary or transient basis for weekend and weekly rentals. Altemate reports receipts for these rentals and pays hotel taxes on them. Dan Meyers, president of Cedar Oak, averred that after Cedar Oak learned of Altemate's use of its property "for short term Bed & Breakfast type rentals," it provided Altemate written notice that its use violated the Subdivision's deed restrictions and requested that Altemate discontinue all commercial uses of the property. When Altemate refused, Cedar Oak obtained a temporary injunction preventing Altemate from renting or leasing its property to the public for temporary or transient housing purposes in violation of the Subdivision's deed restrictions.

Cedar Oak then filed the present suit seeking declaratory and injunctive relief and civil penalties. Altemate answered and filed a no-evidence motion for summary judgment, alleging that Cedar Oak had produced no evidence that the deed restrictions prohibit Altemate from renting the property for short-term recreational purposes. Cedar Oak filed a response and counter-motion for summary judgment, asserting that the relevant restrictions permit only residential, not commercial, uses of property in the Subdivision.

2

The deed restrictions at issue are contained in the Subdivision's Covenants and Restrictions (the "Covenants") and its Bylaws. The first paragraph of the Covenants states that the deed restrictions apply to all lots in the Subdivision *except* lot 240 (which is designated "commercial"), another lot designated "reserve," and the water-well tract adjacent to the reserve. The Covenants further state, in pertinent part:

> Since this Subdivision has been primarily designed as a haven for recreation vehicles, i.e., motor homes, travel trailers, and campers, it is anticipated that few permanent structures will be built or implaced on the property. However, in this event, Paragraphs 1 through 5 following will govern such installation.
>
> . . . .
>
> 3. No more than one private dwelling house may be erected on any lot in the Subdivision and no more than one mobile home may be permanently parked on any lot.
>
> . . . .
>
> 7. Each and every restriction and condition contained herein shall continue and remain in full force for the longest period allowed by law, unless one or more of said restrictions and conditions are sooner modified or abrogated by joint written agreement by the owners of record of 66-2/3% of the lots in said Campfire Subdivision.
>
> 8. Campfire Association [now known as Cedar Oak Mesa, Inc. Property Owners Association] shall be created and the owner or owners of Campfire lots shall be entitled to one voting membership per lot. . . . The purpose of said Association shall be for upkeep, promotion, and maintenance of [the Subdivision], and it may promulgate rules from time to time for the betterment of the community.

Paragraph 24 of the Covenants reiterates that any land designated as "commercial" is not subject to the above restrictions.

The Bylaws, which Cedar Oak purports to have adopted pursuant to paragraph eight of the Covenants, state that with respect to any Subdivision property that is rented or leased, "[t]he tenant occupancy period shall be for no less than 6 months, unless the Board approves extenuating circumstances." Altemate disputes the validity of the Bylaws, asserting that Cedar Oak "provide[d] no evidence that the Bylaws upon which it relies were agreed upon by any lot owners, let alone 66 2/3%, or that they were properly authorized by the owners. Therefore, the Court cannot rely on the Bylaws as deed restrictions in this case." Cedar Oak counters that, at a minimum, the validity of the Bylaws is a fact question precluding summary judgment for Altemate.

The trial court, after reviewing both parties' summary-judgment motions and responses, found that Altemate's property "is not restricted from use as a short-term vacation rental" and therefore granted Altemate's summary-judgment motion and denied Cedar Oak's motion. Cedar Oak appeals.

## DISCUSSION

In its first issue, Cedar Oak argues that the trial court erred in granting Altemate's no-evidence motion for summary judgment because Cedar Oak produced more than a scintilla of evidence that short-term, commercial rentals on property within the Subdivision were prohibited by the Covenants and Bylaws. In its second issue, Cedar Oak argues that the trial court erred in denying its motion for summary judgment.

4

***Summary-Judgment Standard of Review***

We review the trial court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under the no-evidence standard, a defendant may move for summary judgment after adequate time for discovery on the ground that there is no evidence of one or more essential elements of a claim on which the plaintiff would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a pre-trial directed verdict; therefore, we apply the same legal-sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Under the "traditional" summary-judgment standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When, as here, both parties file motions for summary judgment and the court grants one and denies the other, we must decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

***Review of Restrictive Covenants***

We also review the trial court's construction of a restrictive covenant de novo. *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied). The general rules for contract construction apply to restrictive covenants. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). We construe restrictive covenants as a whole in light of the circumstances at the time the parties entered into the agreement, giving effect to every sentence, clause, and word of a covenant, and avoiding constructions that would render parts of the covenant superfluous or inoperative.

*Owens*, 241 S.W.3d at 129-30. Our primary obligation in construing restrictive covenants is to give effect to the true intention of the parties as expressed in the instrument. *Id.* We focus not on their subjective intent but on their objective intent, as it is reflected in the written contract. *See Lopez v. Munoz, Hockema & Reed*, 22 S.W.3d 857, 861 (Tex. 2000).

Covenants restricting the free use of land are not favored by the courts, but they will be enforced if they are clearly worded and confined to a lawful purpose. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). The property code requires that restrictive covenants be construed liberally in order to give effect to their purpose and intent. Tex. Prop. Code Ann. § 202.003(a) (West 2007).[1]

### *Altemate's Summary Judgment*

Paragraph three of the Covenants states that "[n]o more than one private dwelling house may be erected on any lot in the Subdivision." Altemate sought and was granted summary judgment on the ground that the language of paragraph three does not prohibit the use of Subdivision property for short-term commercial rentals. While conceding that paragraph three applies to its property, Altemate urges that the provision itself places no restriction on the *use* of the property—be it residential, commercial, or otherwise. Altemate emphasizes that the words "use," "used,"

---

[1] This Court has previously determined that section 202.003 of the property code does not conflict with the long-standing common-law rule that, if there is ambiguity or doubt as to the drafter's intent, a covenant is to be strictly construed against the party seeking to enforce it and in favor of the free and unrestricted use of land. *See Reagan Nat'l Adver. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 493 n.2 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.). Several other courts of appeals, however, have questioned whether the statutory and common-law rules can be reconciled. *See City of Pasadena v. Gennedy*, 125 S.W.3d 687, 693-95 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (collecting cases).

"residence," or "residential" do not appear anywhere in the Covenants. In Altemate's view, paragraph three limits only the number and "architectural form" of improvements that may be erected on a single lot, i.e., a lot may contain no more than one permanent structure and such structure shall be a dwelling house (such as a log cabin). Altemate urges that its interpretation best reflects the drafters' intent that the Subdivision be "transient friendly," as indicated by the preambular language stating that the Subdivision shall be a haven for mobile homes and travel trailers.

Cedar Oak, on the other hand, interprets this provision to mean that the Covenants' reference to "private dwelling houses" logically was intended to restrict owners to private, residential use. *See, e.g.*, *Webster's Third New Int'l Dictionary* 706 (2002) (defining "dwelling" as "a building or construction used for residence: abode, habitation"); *Black's Law Dictionary* 582 (9th ed. 2009) (defining "dwelling-house," often shortened to "dwelling," as "the house or other structure in which a person lives; a residence or abode"). Cedar Oak argues that its interpretation harmonizes and gives effect to the entire instrument, which elsewhere exempts "commercial" lots from the Covenants—references that would be meaningless if the lots governed by paragraph three could also be used for commercial purposes.

For a court to be able to construe a restrictive covenant as a matter of law, the covenant must be unambiguous. *TX Far West, Ltd. v. Texas Invs. Mgmt.*, 127 S.W.3d 295, 302 (Tex. App.—Austin 2004, no pet.) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)); *see Dynamic Publ'g & Distrib. L.L.C. v. Unitec Indus. Ctr. Prop. Owners Ass'n*, 167 S.W.3d 341, 345 (Tex. App.—San Antonio 2005, no pet.). "Like a contract,

7

covenants are 'unambiguous as a matter of law if [they] can be given a definite or certain legal meaning.'" *Pilarcik*, 966 S.W.2d at 478. By contrast, if a covenant is susceptible of more than one reasonable interpretation, it is ambiguous, which creates a fact issue as to the parties' intent. *Id.* Whether restrictive covenants are ambiguous is a question of law for the court to decide by reviewing the covenant as a whole in light of the circumstances present when the covenant was entered. *Id.*; *Jennings v. Bindseil*, 258 S.W.3d 190, 195 (Tex. App.—Austin 2008, no pet.).

We conclude that the language of the Covenants themselves—setting aside for the moment the tenancy-limitation provision in the disputed Bylaws—can reasonably be read either as distinguishing between commercial uses of property and property that is used as a "dwelling" in the manner urged by Cedar Oak, or as simply limiting the number and type of improvements that may be erected on a lot to a single dwelling, as Altemate suggests. Because the Covenants cannot be given a definite or certain legal meaning, they are ambiguous. *See TX Far West*, 127 S.W.3d at 303. Because the ambiguous language of the Covenants cannot establish as a matter of law whether the original parties intended to allow commercial, non-residential uses of buildings constructed on the subject lots, the language of the Covenants alone is insufficient to support the trial court's summary judgment. *See id.* Accordingly, we sustain Cedar Oak's first issue and hold that summary judgment for Altemate was improper.

### Cedar Oak's Summary Judgment

As to Cedar Oak, it too was not entitled to summary judgment on the basis that the Covenants are unambiguous in its favor. Cedar Oak further argues, however, that the Covenants must be read in conjunction with the Bylaws, which it claims unambiguously prohibit the lease of

8

Subdivision properties for less than six months without approval from Cedar Oak's board of directors.

Altemate responds that this provision in the Bylaws is "unenforceable" for two reasons. First, Altemate asserts that this provision amounts to a modification of the Covenants, which would have required the agreement of 66 2/3% of the property owners in the Subdivision in accordance with paragraph seven of the Covenants, and, according to Altemate, Cedar Oak produced no evidence that the requisite number of property owners approved the modification. Second, Altemate contends that paragraph eight of the Covenants authorizes Cedar Oak to make rules regarding only upkeep, promotion, and maintenance of the Subdivision and does *not* allow Cedar Oak to enact "use restrictions" such as the one contained in the Bylaws. Cedar Oak counters that the Bylaws do not modify any of the restrictions contained in the Covenants and therefore it need not have complied the with 66 2/3% voting requirement in paragraph seven. Instead, Cedar Oak asserts, the Bylaws are rules that it is authorized to promulgate "for the betterment of the community" pursuant to paragraph eight.

"A developer generally has the unilateral right to impose on its Subdivision, in the first instance, any restrictions that it chooses, to alter or to cancel restrictions, or to abrogate restrictions entirely, so long as no Subdivision lots have been sold." *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 698 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 313 (Tex. App.—Fort Worth 2001, no pet.)). After any of the Subdivision's lots has been sold, the power to amend the deed restrictions may nonetheless continue if the dedicating instrument grants the developer the right to amend the restrictions and establishes

9

a method of doing so. *Id.* Any amendment that the developer makes must be in the exact manner that the dedication provides. *Id.*; *see Norwood v. Davis*, 345 S.W.2d 944, 948 (Tex. Civ. App.—Austin 1961, no writ).

In this case, assuming arguendo that the Bylaws do indeed amend or modify the deed restrictions in the original Covenants, the record contains no evidence of when the Bylaws were first enacted, whether any lots had been sold in the Subdivision at that time, and whether they ever restricted short-term leases of Subdivision property. The copy of the Bylaws that the parties presented to the trial court simply recites that the Bylaws were amended in 1992, reaffirmed in 1996, revised in 2002, and revised and reaffirmed in 2003.[2] On this record, the trial court lacked sufficient facts to determine as a matter of law whether the Bylaws are invalid for the reasons argued by Altemate.

Nor can this Court conclude that the Bylaws are binding as a matter of law. The party seeking to enforce a deed restriction bears the burden of showing that the restriction is valid and enforceable. *See Gennedy*, 125 S.W.3d at 698; *Dyegard*, 39 S.W.3d at 308. Here, the summary-judgment evidence does not conclusively show the validity of the Bylaws. Therefore, we hold that Cedar Oak was not entitled to summary judgment and overrule its second issue.

---

[2] In its brief, Altemate suggests that Cedar Oak "tried to amend its deed restrictions and filed purported 'Bylaws'" only in 2003, an assertion that seems to be inconsistent with the recitations in the Bylaws themselves.

10

## CONCLUSION

Having held that neither party was entitled to summary judgment, we reverse the judgment of the trial court and remand the cause to that court for further proceedings consistent with this opinion.[3]

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Remanded

Filed:   August 31, 2010

---

[3] Altemate asserts that if the Covenants are held to be ambiguous, we must resolve any ambiguities in its favor under the common-law principle that doubts about the meaning of the terms of a restrictive covenant must be resolved in favor of the free use of land. *See, e.g.*, *Travis Heights Improvement Ass'n v. Small*, 662 S.W.2d 406, 409-10 (Tex. App.—Austin 1983, no writ). Consistent with the precedent of this Court, however, we conclude that because the restrictive covenant at issue is ambiguous *and* a fact dispute exists regarding the intent of the drafting parties, neither party is entitled to summary judgment. Remanding the cause for further proceedings is therefore proper. *See TX Far West, Ltd. v. Texas Invs. Mgmt.*, 127 S.W.3d 295, 308-09 (Tex. App.—Austin 2004, no pet.).

11