Case No. 04-14-00483-CV

IN THE COURT OF APPEALS
FOURTH SUPREME JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

*ROWLAND J. MARTIN, APPELLANT*
*INDIVIDUALLY AND IN HIS REPRESENTATIVE CAPACITY AS*
*ADMINISTRATOR FOR THE ESTATE OF KING*

*V.*

*EDWARD BRAVENEC AND THE LAW OFFICE OF MCKNIGHT AND*
*BRAVENEC, ET AL, APPELLEES*

APPELLANT'S OPENING BRIEF

An Interlocutory Appeal
From Orders Of The 285th Judicial District Court,
Bexar County, Texas

Submitted By:

Rowland J. Martin
951 Lombrano
San Antonio, Texas 78207
(210) 383-3849

## IDENTITY OF PARTIES & COUNSEL

1.    Appellant:                                                Rowland J. Martin
Individually and As Administrator of The Estate Of King
951 Lombrano
San Antonio, Tx 78207

        Represented by:           Pro se

2.    Appellees                  Edward Bravenec, the Law Firm of McKnight and Bravenec, 1216 West Ave., Inc.

        Represented by:           Glenn Deadman, Esq.
S. 509 Main Street
San Antonio, Texas, 78204

3.    Interested Third Parties Subject To Joinder:

3a.                          Bailey Street Properties

        Represented by:           Law Office of McKnight and Bravenec
405 South Flores
San Antonio, Tx. 78205

3b.                          Torrabla Properties, LLC
18507 Canoe Brook,
San Antonio, Texas

                                           Office Address:
1626 S.W. Military Dr.
San Antonio, Tx. 78201

        Represented by:           Unknown

# TABLE OF CONTENTS

Identity of Parties and Counsel............................................................................2

Table of Contents ........................................................................................4

Index of Authorities ......................................................................................5

Statement of the Case ....................................................................................8

Statement of Jurisdiction...............................................................................10

Statement of Facts ......................................................................................12

Standard Of Review .....................................................................................15

Issues Presented.........................................................................................11

Argument and Authorities...............................................................................23

Conclusion And Prayer..................................................................................34

Certificate of Service

Certificate of Compliance

Appendix

TAB 1:          Lis Pendens Speech Regarding 1216 West Ave. 2013 – 2014

TAB 2:          Perfected Notice Of Lis Pendens Concerning Purchase Money Lien

TAB 3:          Docketing Statement For Case No. 04-14-00483-CV And Supporting
                Exhibits

TAB 4:          Warranty Deed From Edward Bravenec To Torralba Properties, LLC.

TAB 5:          Releases Of Liens By Texas Community Bank and By J. J. Bravenec and
                Sons.

TAB 6:          Order To Show Cause Of The 285th Judicial District Court

TAB 7:          Documentation Of Post-Stay Trial Proceedings On December 8, 2014.

TAB 8:          *Archer v. Blakemore*, 367 S.W.2d 402, (Tex. App. Austin -1963)

# INDEX OF AUTHORITIES

## Cases

*Airvantage, L.L.C. v. TBAN Props. #1, L.T.D.,* 269 S.W.3d 254, 259 (Tex. App.—Dallas 2008, no pet.) ...................................................................................................................

*Alphonso v. Deshotel,* 417 S.W.3d 194 (Tex. App.—El Paso 2013, no pet.) ...................46 58

*Amalfitano v Rosenberg,* 428 F Supp 2d 196 (S.D. .N.Y., 2006) (Amalfitano I) ,
*Amalfitano v Rosenberg,* 533 F3d 117, 125 (2d Cir., 2008) (Amalfitano II), and
*Amalfitano v Rosenberg,* 12 NY3d 8 (N.Y. App., 2009) (Amalfitano III)...........................

*Anderson v. Law Firm of Shorty, Dooley & Hall,* (E.D. La. Feb 17, 2010) affirmed in 393 Fed. Appx. 214 (5th Cir. Aug. 26, 2010)................................................................................

*Archer v. Blakemore,* 367 S.W.2d 402, (Tex. App. Austin -1963)....................................

*Avila v. Larrea,* 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied).....................11, 16, 17, 22

*Barranza Family Limited Partnership v. Levitas,* Case No. 13-07-00470-CV (Tex.App. 13th Dist. - Corpus Christi, 2009).......................................................................................21, 26

*Better Bus. Bureau of Metropolitan Dallas v. BH DFW, Inc.,* 402 S.W.3d 299 (Tex. App.— Dallas 2013, pet. denied) ...............................................................................................43

*Bravenec v. Flores,* Case No. 04-11-00444-CV (Tex. App. – San Antonio, 2013 ............57, 64

*Britton v. Seale,* 81 F.3d 602 (5th Cir.1996) (citing Zuniga) ...........................................

*Butnaru v. Ford Motor Co.,* 84 S.W.3d 198 (Tex. 2002) ....................................34, 66, 68

*Chisholm v. Chisholm,* 209 S.W.3d 96, 98 (Tex. 2006) (per curiam)................................22

*Collins v. Tex Mall, L.P.,* 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.).........

*Criswell v. Ginsberg & Foreman,* 843 S.W.2d 304, 306–07 (Tex.App.—Dallas 1992, no writ)...................................................................................................................28, 59 , 60

*DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304 (Tex., 2008)................................37, 63

*Davis v. Huey,* 620 S.W.2d 561, 565–66 (Tex. 1981) ..............................................

*Drew v. Unauthorized Practice of Law Comm.,* 970 S.W. 2d 790 , 793 (Tex. App. Austin – Dallas – 1979, no writ.)..............................................................................................

*Duncan v. Butterowe, Inc.,* 474 S.W.2d 619 (Tex. App.—Houston [14th Dist.] 1971, no writ) ................................................................................45

*Dynamic Publ'g & Distrib. L.L.C. v. Unitec Indus. Center Prop. Owners Ass'n, Inc.,* 167 S.W.3d 341 (Tex. App.—San Antonio 2005, no pet.)............................................................

*Emeritus Corp. v. Ofczarzak,* 198 S.W.3d 222, 225-26 (Tex. App.- San Antonio 2006, no pet.) ..............................................................................

*Farias v. Garza,* 426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. filed May 6, 2014)......................................................14, 44, 45

*Fitzmaurice v. Jones,* 417 S.W.3d 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.)..........45
*Frick v. Total Separation Solutions, LLC,* (Tex.App.- Houston [14th Dist.] Jul. 16, 2009) ...........................................................................8

*G & R Inv. v. Nance,* 588 S.W.2d 804, 806 (Tex. Civ. App.- Houston [14th Dist.] 1979, writ ref'd n.r.e.)...........................................................................8

*Giles v. Cardenas,* 697 S.W.2d 422 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)............

*Goad v Zuehl Airport Flying Community Owners Association, Inc.,* Case No. 04-11-00293-CV (Tex. App. – San Antonio, May 23, 2012).......................................................42

*Group Purchases, Inc. v. Lance Invs., Inc.,* 685 S.W.2d 729, 731-32 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)...........................................................................

*Guajardo v. Alamo Lumber Co.,* 159 Tex. 225, 317 S.W.2d 725, 726 (Tex. 1958). ................8

*Gulf Coast Investment Corp. v. Brown,* 821 S.W.2d 159 (Tex. 1991)..............................

*Gulf Ins. Co. v. Burns Motors,* 22 S.W.3d 417, 424 (Tex. 2000) ....................................

*Gunn v. Minton,* 568 U.S. 310 (2013).................................................................

*Hansen v. Caffry,* 280 A.D.2d 704, 720 N.Y.S.2d 258 (3d Dept. 2001)........................34, 34

*In the Matter of Energytec, Inc.,* — F.3d –, Case No. 12-41162 (5th Cir. Dec. 31, 2013).........

*In re Liberty Trust Co.,* 130 B.R. 467 (W.D. Tex. 1991).............................................

*In re Lipsky,* 411 S.W.3d 530 (Tex. App.—Fort Worth 2013, orig. proceeding [mand. pending]) ...........................................................................42

4

*In re M.B.B-Y.*, No. 04-10-00541-CV, 2011 LEXIS 2520, (Tex. App.—San Antonio, April 6, 2011, no pet.) (mem. op.)...............................................................

*In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex. 2010)..........................

*In re S.W. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (per curiam)............................22

*In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002)..................

*Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987)................

*Johnson v. Lockhart*, 40 S.W. 640 (Tex. 1897) ........................................................

*Kinney v. BCG Atty. Search, Inc.*, No. 03-12-00579-CV, 2014 Tex. App. LEXIS 3998, at *15-16 (Tex. App.—Austin, April 11, 2014, n.p.h.) .............................................41

*Kittrell v. City of Rockwell*, 526 F.2d 715, 716 (5th Cir. 1976)......................................33

*Kroger Tex. v. Suberu*, 216 S.W.3d 788 (Tex. 2006) ..........................................26, 72

*Larry York v. State*, 373 S.W. 3d 32 (2012)......................................................23

*Manuel v. Spector*, 712 S.W.2d 219, 221 (Tex. App.—San Antonio 1986, orig. proceeding)...................................................................................36, 64

*Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App.—Houston [1st Dist.] 2011, no pet.).....

*McKaskey v. McCall*, 236 S.W. 432 (Tex. App. – El Paso, 1920)....................................

*McKnight and Bravenec v. Reliant Financial, Inc. et al*, Case No. 2006-CI-15329................18

*Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)...............................

*Mills v. Green*, 159 U.S. 651, 653 (1895)......................................................62

*Munson v. Milton*, 948 S.W.2d 813 (Tex. App.—San Antonio 1997, writ denied).

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011)..............62

*Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71; (Tex. App – 1st Dist. – Houston 2013)..................................................................22, 46

*New Times, Inc. v. Isaacks*, 146 S.W.3d 144 (Tex. 2004)..............................................

*Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283 (Tex. App.—San Antonio 1999, pet. denied).

*Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)..............................................

*Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ......................................................................................19, 40, 42, 43

*Reno v. ACLU*, 521 U.S. 844 (1997) .....................................................................

*Rio Grande H2O Guardian v. Robert Muller Family P'ship. Ltd.*, No. 04-13-00441-CV, 2014 WL 309776, at *2 (Tex. App.—San Antonio January 29, 2014, n.p.h.)...........................42

*Rocha v. Ahmad*, 662 S.W.2d 77 (Tex. App.--San Antonio 1983, no writ)...................................................................................................30, 31

*Sierra Club v. Andrews County*, 418 S.W.3d 711 (Tex. App.—El Paso 2013, pet. filed March 24, 2014)...............................................................................38, 41, 42

*State Farm Fire & Casualty Co., v. Gandy*, 925 S.W. 2d 696, 707-11 (Tex. 1996)......................

*Teal Trading and Development, LP v. Champee Springs Ranches Property Owners Association*, Case No., 04-12-00623-CV (Tex App. – San Antonio 2014) .........................................................

*Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) (per curiam)......................

*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) ............................36, 63

*Unifund CCR Partners v. Villa*, 273 S.W. 3d 385 (Tex. App. - San Antonio, 2008)...............24

*United Healthcare Ins. Co. v. Davis*, 602 F.3d 618, 627 (5th Cir. 2010)..........................

*Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992).......................................................58

*Walker v. Schion*, 420 S.W.3d 454, (Tex. App.—Houston [14th Dist.] 2014, n.p.h.) ...............44

*Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App. – San Antonio 1997, writ denied))........................................................................

*Webb v. Glenbrook Owners' Ass'n.* 298 S.W. 3d 374, 384 (Tex. App. – Dallas 2009, no pet.).

*Whiteside v. Bell*, 162 Tex. 411, 347 S.W.2d 568, 570 (Tex., 1961)....................................

*Yiamouyiannis v. Thompson*, 764 S.W.2d 338 (Tex. App.—San Antonio, 1988, writ denied)...........................................................................................27

*Young v. Krantz*, 2014 Tex. App. LEXIS 5703 (Tex. App.—Dallas 2014, n.p.h.)...........39, 40

## Constitutional Provisions, Statutes and Rules

Constitution of the United States. Article I, Section 10, Clause 1 (Contracts Clause) .............21

House Comm. on Judiciary, Bill Analysis, Tex. H.B. 2973, 82d Leg., R.S. (2011)...............16

Texas Constitution, art. I, Section 13.............................................................................

Texas Constitution, art V, Section 6.......................................................................10

Tex. Civ. Prac. & Rem. Code § 16.051.................................................................19

Tex. Civ. Prac. & Rem. Code § 27.008 .................................................................10

Tex. Civ. Prac. & Rem. Code §31.002(a) .................................................................24

Tex. Civ. Prac. & Rem. Code Section 51.014 .................................................8, 10

Tex. Prop. Code Ann. § 12.008.......................................................................

Tex. Prop. Code Ann. § 202.003(a).....................................................................

Tex. Gov't Code Section 22.221...................................................................10, 15

## APPELLANT'S OPENING BRIEF

Appellant Rowland J. Martin files his opening brief. The brief refers to Martin as "Appellant." Appellees Edward Bravenec and the Law Office of McKnight and Bravenec , will be referred to by name, or collectively as "plaintiffs" or "Appellees" as they were designated below. As Appellant seeks affirmative relief on the counterclaims that were pending when the appeal was filed, and his pending Petition For Writ of Mandamus and Prohibition was denied, the brief asserts that the sanctions provisions of the Texas Citizen's Participation Act furnish an adequate remedy at law to support affirmative relief.

## STATEMENT OF THE CASE

**Nature of the case**. On or about May 13, 2014, Appellees commenced a suit against Appellant for tortuous interference with contractual relations, based on certain lis pendens notices affecting a property known as 1216 West Ave., in San Antonio, Texas, and was granted an ex parte temporary restraining order.. Bravenec's case for tortious interference is in the nature of a quiet title controversy in which he seeks relief for breach or rescission of title covenants.

**Course of proceedings**: Appellant filed an answer and counterclaims for legal malpractice, abuse of process and declaration of purchase money interests in response to Plaintiff's original petition and application for temporary restraining orders. Thereafter, Appellant filed a plea to jurisdiction and a motion to dismiss in connection with the hearing set for July 9, 2014.

**Trial Court disposition**: The trial court granted Appellees' motion for temporary injunction with a trial setting of December 8, 2014, and entered orders denying Appellant's pleas to jurisdiction were entered on orally on July 9, 2014 and in writing on July 17, 2014. A series of interlocutory appeals were taken on July 9, 2014 and July 18, 2014, in response to orders entered by the trial court, including the trial court's "Order on Motion To Dismiss" dated July 17, 2014 ("dismissal denial order").

## ISSUES PRESENTED FOR REVIEW

Issue 1:    The Injunction Order Institutes Unconstitutional Treatment of The Interlocutory Appeal Statute And Automatic Stay Mandate In Section 51.014(b) Of The Texas Civil Practice And Remedies Code, So As To Restrict Appellant's Common Law Rights Of Action As Purchase Money Lien Claimant In Derogation Of The Open Courts Doctrine.

Issue 2:    The Trial Court Departed From The Law That Governs Specificity Requirements For Temporary Injunctions As Set Forth In Tex. R. Civ. P. 683.

Issue 3:    The Trial Court Misapplied The Law Governing TCPA Burden Shifting Procedures For The Processing Of Motions To Dismiss Pursuant Under Section 27.008 Of The Texas Civil Practice And Remedies Code.

## STATEMENT OF JURISDICTION

The Court has appellate jurisdiction to consider this appeal as originally noticed pursuant to TEX. CIV. PRAC. & REM. CODE §51.014(A) (4) and (12) as an appeal from the trial court's interlocutory grant of temporary injunctive relief and from its denial of a motion to dismiss filed under the Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE § 27.003 (Tab A). See also TEX. CIV. PRAC. & REM. CODE § 27.008. Due to the a lapse in the trial setting that disintegrated the injunction, it appears that the Court may lack jurisdiction over the appeal under Section 51.014(a)(4) insofar as a significant part of the appeal is now moot. *Frick v. Total Separation Solutions, LLC*, (Tex.App.- Houston [14th Dist.] Jul. 16, 2009) (per curiam dismissal of temporary injunction appeal for mootness with order entered dissolving temporary injunction); *G & R Inv. v. Nance*, 588 S.W.2d 804, 806 (Tex. Civ. App.- Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Guajardo v. Alamo Lumber Co.,* 159 Tex. 225, 317 S.W.2d 725, 726 (Tex. 1958). See, Tex. R. Civ. Pro. Rule 683.

11

## STATEMENT OF THE FACTS

A. **The Interlocutory Appeal Involves A Claim Of Purchase Money Lien Interests Running With The Land, And A Tortious Interference Case That Has Been Asserted To Collaterally Attack The Purchase Money Lien.**

On May 13, 2014, Appellee Edward Bravenec sued Appellant Rowland Martin for filing lis pendens notices in Bexar County Deed Records and purchase money pleadings in the 285th Judicial District Court in a suit for tortious interference with contractual relations relating to a sale of real property. Appellant asserts for various reasons that the Appellees' case is unfounded. *Farias v. Garza*, 426 S.W.3d 808, 820 (Tex. App.—San Antonio 2014, pet. filed May 6, 2014) (reversing denial of Tex. Civ. Prac. & Rem. Code Section 51.014(a)(12) motion to dismiss); *Teal Trading and Development, LP v. Champee Springs Ranches Property Owners Association*, Case No., 04-12-00623-CV (Tex App. – San Antonio 2014) (estoppels by deed).[1] A lis pendens is a statutorily authorized notice recorded in the deed records warning all persons that the property is the subject matter of litigation. *Airvantage, L.L.C. v. TBAN Props. #1, L.T.D.*, 269 S.W.3d 254, 259 (Tex. App.—Dallas 2008, no pet.) Under the Texas Property Code, a party to an action involving title to real property could file a lis pendens notice with the county clerk where the property is located. Tex. Prop. Code § 12.008. The purpose of the notice of lis pendens is twofold: (1) it protects the alleged rights of the party filing it, and (2) it puts those interested in the property on notice of the lawsuit. *Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.). The effect of a lis pendens remains throughout the appeal of a trial court's

---

[1] "The rationale of the rule [governing on estoppel by deed] is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained." *Loomis v. Cobb*, 159 S.W. 305, 397 (Tex.Civ.App.—El Paso 1913, writ ref'd). *See also, Wessels v. Rio Bravo Oil Co.*, 250 S.W.2d 668 (Tex.Civ.App.—Eastland 1952, writ ref'd) (It is well settled that "a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims.").

12

judgment. *Group Purchases, Inc. v. Lance Invs., Inc.*, 685 S.W.2d 729, 731-32 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

An accurate valuation of Appellant's total losses can only be ascertained through an equitable accounting for rents and profits. For example, as set forth in Part B, the face value of Appellant's purchase money lien in the subject property is $135,000. The value of Appellant's possessory interest in the subject property as a condominium declarant is at least $297,000 at the time of his ouster by McKnight and Bravenec in November 2006, based on a letter of credit Appellant secured from Fisher Enterprises of New York, NY to fund the reorganization plan for Moroco Ventures. The above stated losses exclude legal expenses and net profits from rents and contract of sale proceeds directly or indirectly accruing to Bravenec.

Thus, the focus of the interlocutory appeal centers on whether the trial court's conclusions of law in the context of orders denying dismissal pursuant to the TCPA and granting temporary injunctive relief were sufficient to release Appellees and their successors in interest from compliance with restrictive covenants arising from the first and second deeds of trust and lien agreements which constitute Appellees' chain of title. Torralba Properties, Inc. is a pendent lite purchaser of record whose acquired the subject property during the pendency of the instant interlocutory appeal and whose sales proceeds are being held in escrow. As a pendent lite purchaser under a grant from Appellees, Torralba is accountable with Appellees for the satisfaction of restrictive covenants that run with the land. Urban Renewal Agency of San Antonio, Id

**B.          McKnight and Bravenec Acquired Their Estate By Special Warranty Deed Subject To Purchase Money Liens And Recorded Prescriptive Rights.**

On October 31, 2003, Appellant acquired a lien interest in the subject property by furnishing the sum of $135,000 to the owners and sellers of the property known as 1216 West

13

Ave, in San Antonio, Texas Roy Ramspeck, et al, as purchase money for a down payment to enable the entity known as Moroco Ventures, LLC to acquire title to the property in its own name on behalf of the Appellant 's corporate estate. The first deed of trust and first lien agreement records prescriptive and rights and exceptions to conveyances and warranties applicable to Appellant 's then unrecorded purchase money lien interest. The record of the proceeding in *In re Estate of King*, Probate Case No. 2001-CI-1263 establishes that McKnight and Bravenec were attorneys of record for the Appellant and the Estate of King on May 3, 2005. *See, Appendix to In re Rowland J. Martin*, Case No. 04-13-00370-CV (Tex. App. – San Antonio, 2014). The instrument of record giving notice of Plaintiff's rights as a third party in relation to Moroco Ventures, LLC at the time the parties executed the Second Deed Of Trust was the First Deed of Trust executed on October 31, 2003. Two other instruments effectuating exceptions to conveyances and warranties applicable to the Second Deed Of Trust are recorded in Book 12237, Page 1089, ("Order on Motion For Contempt Against Law Office of McKnight and Bravenec" Bankruptcy Case 06-50829 dated June 20, 2006), and in Book 12426, Page 2234 ("Condominium Declaration of Moroco Ventures, LLC Establishing the Deco Village Annex" dated October 2, 2006). See Docketing Statement Exhibits E and F. The aforementioned purchase money lien interest and prescriptive rights were and directly touched and concerned the land are separate and collateral to the rights of redemption that were then held by Appellant 's corporate estate in terms of time, space, original and motivation.

On May 3, 2005, McKnight and Bravenec accepted a second deed of trust and lien agreement subject to recorded exceptions to conveyances and warranties through Appellant's corporate estate, Moroco Ventiures, LLC. On October 4, 2006, McKnight and Bravenec conducted a post-petition foreclosure sale, under color of authority granted by the 57th Judicial

14

District Court while the subject property of Chapter 11 Bankruptcy Estate. McKnight and Bravenec then proceeded to oust Appellant from the property through a transfer of control to Bailey Street Properties, Inc., in proceeding in which Bravenec adversely represented Bailey Street Properties as the plaintiff party in a suit for forceable entry and detainer against Appellant as the defendant party. On October 3, 2006, the day before the foreclosure, Appellant held a homestead interest the property and was the beneficial owner of condominium declaration which together conferred upon him an interest in the nature of an easement by estoppel, in addition to his purchase money lien interest and prescriptive rights to an equity of re-entry against Edward Bravenec.

On October 31, 2006, the 57th Judicial District Court approved a settlement in Case No. 2006-CI-15329 between Plaintiffs McKnight and Bravenec, and Defendants, Reliant Financial, Inc., et al. The settlement subrogated McKnight and Bravenec to the position of Reliant Financial, Inc. as the original grantees of the First Deed of Trust. See Docketing Statement, Exhibit H. On November 1, 2006, the 57th Judicial District Court entered an order denying intervention and injunctive relief which adopted the finding that a foreclosure took place on October 3, 2006 in accordance with the trustee's deed recital that "MOROCO VENTURES LLC has defaulted in the payment and performance of obligations to ALBERT MCKNIGHT and EDWARD BRAVENEC." Docketing Statement Exhibit I. In 2007, McKnight and Bravenec transferred the subject property to a jointly owned corporate entity known as 1216 West Ave., Inc. On August 10, 2012, the Hon. Leif M. Clark issued a partial judgment in Bankruptcy Case No. 05-80116 and Adversary Case No. 11-5141 to retroactively confirm Appellant 's status as purchase money creditor based on proceedings in *McKnight and v. Reliant Financial, Inc. et al,* Cause No. 2006-CI-15329 in 57th Judicial District Court. The order is cited in Appellant's

15

Notice of Apparent Liability For Purchase Money Claims and in his Perfected Notice of Lis Pendens Recording Purchase Money Lien Claims.

Applying a liberal construction, Bravenec's chain of title shows that his foreclosure trustee conveyed a special warranty deed subject to restrictive covenants recited in the first and second deeds of trust and lien agreements, both of which encompass Appellant's Notice of Apparent Liability For Purchase Money Claims. The latter chain of title evidence indicates conclusively that the status quo at the time of Appellees' tortious interference suit was based on actual notice of recorded exceptions to conveyances and warranties, and that the common law doctrine of estoppel by deed is applicable on that basis to the estate Bravenec conveyed to Torralba Properties in July 2014.

## C. The Rulings In Question Were Adverse To Appellant's Common Law Right To Assert Purchase Money Lien Claims And To Litigate Legal Malpractice Disputes.

The court proceedings on the Appellees' tortious interference case took place on July 1, 2014, July 9, 2014 and July 17, 2014 and December 8, 2014, and led to two adverse rulings to Appellant's common law claim of purchase money lien interests – an order denying a motion to dismiss and an order granting temporary injunctive relief. On appeal, Appellant asserts eight points of error in support of the assertion that the trial court's temporary injunction order was unconstitutional as applied, that the temporary injunction order contravened the specificity requirements of Tex. R. Civ. P. Rule 683, and that the non-dismissal order misapplied the TCPA's burden shifting procedures.

For standing to prosecute their tortious interference case in chief, Appellees alleged an injury to Bravenec's interest in a single contract of sale with an unspecified buyer. The injury was purportedly caused by the anticipated lis pendens abuse. Appellees assert that Bravenec's injury is precluded by the supposed res judicata effect of the federal district court judgment in

16

*Martin v. Grehn, et al,* Case No. SA 11-CV-0414-HLH. Throughout their pleadings, Appellees imply that the res judicata effect of *Martin v. Grehn* deprives Appellant the opportunity to litigate purchase money lien claims, but offer no testimony or citations to federal court records to substantiate their res judicata contentions. The pleadings neither describe nor contain a copy of the instrument styled as a *"Notice of Apparent Liability For Purchase Money Claims,"* which Appellees caused the trial court to cancel the instrument in its original ex parte temporary restraining order on May 13, 2014. Subsequently, Appellees secured an order to show cause by alleging that Appellant committed an act punishable by contempt with the filing of a lis pendens notice in the docket of their tortious interference case in the 285th Judicial District Court.

Appellees's treatment of the TCPA is presented in the following statement which implies ambiguously that Appellees are either exempt from the Act, or that the Act was not intended to cover lis pendens notices as a form of protected speech and litigation arising from real estate sales transactions: "Martin refers to 'Texas Citizen's Participation Act' pretty much every chance he gets. This act is inapplicable. The purpose of this act is to safeguard constitutional rights of persons to speak freely and associate freely ... It is inapplicable to real property suits and simply has no bearing on this case." *Appellees' Motion To Set Hearing Tex. Civ. Prac. Rem, Code Section 13.005,"* dated August 13, 2014, at p. 2 – 3.

In opposition to Appellees' claim for tortious interference, Appellant relied on Judge Clark's order of August 10, 2012 to establish his capacity as a purchase money creditor and former beneficiary of an attorney client relationship, and on that basis asserted various defenses, affirmative defenses and objections. It is alleged fundamentally by way of defense that Appellant's lis pendens filings in 2014 merely enabled the contracting parties to exercise the rights afforded to them at common law. Appellant also alleged arguably dispositive affirmative

17

defenses based on common law and statutory authority. In particular, it was alleged on July 1, 2014 and July 9, 2014 that the tortious interference claim is both subject to estoppel and is moot at common law because the lis pendens relief they request is incapable of absolving actual notice of liability for purchase money claims. It was further alleged on July 9, 2014, July 17, 2014 and December 8, 2014, pursuant to the Texas Citizens Participation Act, that the tortious interference case arising from the purported contract of sale was in response to and was based on the exercise of the right to free speech involving lis pendens notices and the right to petition for redress of attorney client disputes. Lastly, Appellant objected to the trial court's entry of its temporary injunction order on July 17, 2014, and to the trial proceedings on December 8, 2014 where Appellees attempted to prosecute sanctions for discovery violations, both of which proceedings took place after a timely notice of appeal from the trial court's order denying Appellant's TCPA motion to dismiss.

Ultimately, the trial court denied dismissal and granted temporary injunctive relief. The non-dismissal order reads in its entirety: "On the 9th day of July came to be heard the Motion to Dismiss filed by Rowland J. Martin. After the evidence and argument of counsel this court finds the Motion is without merit." The temporary injunction order was entered the same day, and contains three findings and five decretal clauses, all of which restrict Appellant's common law privileges and litigation rights. In effect, both orders adopt Appellees' view that the TCPA's stay provisions are non-self-executing and non-automatic, and that an order for a stay of proceedings was required in advance in order to compel the trial court and the Appellees to comply with the provisions of Section 51.014(b) which states "[a]n interlocutory appeal under Subsection (a) .... stays commencement of a trial in the trial court pending resolution of the appeal." Tex. Civ. Prac. Rem Code Section 51.014(a).

18

## STANDARD OF REVIEW

"To establish a cause of action for tortious interference, a plaintiff must prove that (1) a contract subject to interference exists, (2) the defendant committed a willful and intentional act of interference with the contract, (3) the act proximately caused injury, and (4) the plaintiff sustained actual damages or loss ..." *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.— Houston [1st Dist.] 2013, pet. denied); *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). In reviewing a conclusion of law about legal sufficiency, a court of appeals credits evidence that supports the conclusion if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). Evidence is legally insufficient when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

Under the governing rules of construction, the construction of a restrictive covenant involves a question of law. *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n,* 178 S.W.3d 384, 390 (Tex.App.-Fort Worth 2005, pet. denied); *see also Kothmainn *485485 v. Rothwell*, 280 S.W.3d 877, 879 (Tex.App.-Amarillo 2009, no pet.). Consequently, a court of appeals has no need to defer to the construction assigned by the trial court, and must address the matter de novo to assure that restrictive covenants are "liberally construed" to give effect to their purposes and intent. See Tex. Prop. Code Ann. § 202.003(a) (Vernon 2007). Moreover, when interpreting restrictive covenants, Texas courts apply the general rules of

19

contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Under the governing rules, the courts attempt to ascertain the true intention of the parties as expressed in the instrument, *Gulf Ins. Co. v. Burns Motors*, 22 S.W.3d 417, 424 (Tex. 2000), by examining the writing as a whole and in light of the circumstances present at its execution. A reviewing court is obligated to assign the words that appear in the instrument containing the restrictive covenant their common meaning. *Wilmoth v. Wilcox*, 734 S.W.2d 656,657-58 (Tex. 1987).

In applying choice of law criteria in *Chisholm v. Chisholm*, Case No. 04-06-00504-CV (Tex. App., San Antonio, May 23, 2007) (an order issued under a complete lack of jursidiction is void ab initio), the Court stated that "[a]s an intermediate state appellate court ... in a civil matter we are bound by the precedent established by the Texas Supreme Court and the United States Supreme Court, not by Fifth Circuit precedent .... " *Id*. The undisputed facts of this case are controlled by Texas Supreme Court authority in *Larry York v. State of Texas*, 373 S.W.3d 32 (2012), which holds that '[a]n action taken in violation of the automatic stay is void, not merely voidable,' and U.S. Supreme Court authority in *Cooke et al, v. Avery*, 147 US 375, 13 S.Ct. 340, 37 L. Ed. 209 (1893) and *Long Beach Mortg. Co. v. Evans*, 284 S.W.3d 406 (Tex. App. Dallas 2009), reh'g overruled, (June 17, 2009) and review denied, (Nov. 20, 2009) and cert. denied, 130 S. Ct. 3470, 177 L. Ed. 2d 1056 (2010),

*York* is the controlling Texas Supreme Court decision on automatic stay procedures. The Supreme Court held in York that trial courts lack competent jurisdiction to disregard automatic stay requirements due to the laws governing their creation:

> ... treating an action in violation of the automatic stay as void is more consistent with its purpose of providing ... a "breathing spell"... Either the debtor must affirmatively challenge creditor violations of the stay, or the violations are void without the need for direct challenge. If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions. If violations are void, however, debtors are afforded better protection and can focus their

attention on reorganization. Given the important and fundamental purpose of the automatic stay ... we find that Congress intended violations of the automatic stay to be void rather than voidable. ... Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor. In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor. We think that the former paradigm, rather than the latter, best harmonizes with the nature of the automatic stay and the important purposes that it serves ... ' there are classes of cases over which a court has not, under the very law of its creation, any possible power ... In such cases the entire proceedings are coram non judice. ...'

Id. An order approving a claim founded on erroneous "purported creditor" status lies within appellate court's remedial authority under York, *Unifund CCR Partners v. Villa*, 273 S.W. 3d 385 (Tex. App. - San Antonio, 2008) (upholding a trial court's imposition of sanctions on a claimant attempting to collect debts that had already been discharged). Conversely, a trial court has no authority to ratify a post-petition foreclosure without intervention by all interested parties, *see Barranza Family Limited Partnership v. Levitas*, Case No. 13-07-00470-CV (Tex.App. 13th Dist. - Corpus Christi, 2009), or to rely on misconceptions about whether or not deed covenants run with the land, *Stout v. Rhodes*, 373 S.W.2d 94 (Tex. Civ. App.—San Antonio 1963, writ ref'd n.r.e.).

In *Cooke,* the U.S. Supreme Court endorsed the doctrine of estoppel by deed by expressly holding that the defendant-grantee "could not question the validity of their grantor's title at the time of the conveyance to them ... claiming under the same grantor, unless, indeed, they claimed under a paramount title, which they had acquired or connected themselves with." The Supreme Court also specifically acknowledged exceptions to res judicata in *Cooke* that are highly relevant to the paramount interests in title asserted in the instant case: "It is conceded that the defendant M. E. Cooke was the wife of her codefendant J. H. Cooke... But it does not follow that [the] judgment ... could be rendered against Mrs. Cooke. The record disclosed nothing to

21

justify the subjection of her separate estate to such a liability, and there was error in the judgment in this particular ... This does not involve the disturbance of the verdict, or a reversal of the judgment in any other respect... The judgment will therefore be affirmed, except ... against M. E. Cooke; and that part thereof will be reversed as to her ... with a direction to the circuit court to order the judgment to be modified so as to conform to the conclusion above announced." *Id.*

In *Long Beach Mortg.,* the U.S. Supreme Court rendered a decision implying that a fundamental interest exists in lis pendens speech. There, a bankruptcy receiver sought to sell certain real property, but could not complete the sale as a result of Long Beach's deed of trust, which clouded title to the property. Long Beach refused to release its lien, and the Receiver filed suit in Dallas County to clear title to the property, seeking declaratory judgment that the Receiver's lis pendens was valid and superior and that Long Beach's lien was therefore invalid and of no force or effect concerning the Real Property. The Receiver prevailed in the trial court, and despite three appeals, including to the United State Supreme Court, the trial court's judgment upholding the lis pendens' validity and superiority was directly or indirectly affirmed.
As a general rule, whether a restrictive covenant runs with the law is a question of law. Id.

The result in *Long Beach* is consistent with the state law rule that a real property covenant runs with the land, and is enforceable according to the doctrine of estoppel by deed, when it touches and concerns the land, it relates to a thing in existence or specifically binds the parties and their assigns, it is intended by the parties to run with the land, the successor to the burden has notice, and there is privity of estate between the parties when the covenant was made. At common law, it is well settled that a purchase money lien is a type of property interest that is capable of running with the land so as to bind transferees under the doctrine of estoppel by deed. *Whiteside v. Bell,* 162 Tex. 411, 347 S.W.2d 568, 570 (Tex., 1961) (noting that deed conveying

22

land subject to a lien for unpaid purchase money is treated as an executory contract); *Johnson v. Lockhart*, 40 S.W. 640 (Tex. 1897) (applying executory contract rule to purchase money dispute); see also, *Davis v. Huey*, 620 S.W.2d 561, 565–66 (Tex. 1981) (a grantee is "bound by those restrictive covenants running with the property of which he has actual or constructive notice," and is estopped from denying the recitals that appear in his chain of title). In cases where the purchase money lien runs with the land, the lien holder enjoys a well settled common law right of action to enforce estoppel by deed and to quiet title to the purchase money interest by treating conveyances in derogation of the purchase money interests as executory in nature. Id. A pendent lite purchaser can elect to surrender the land and sue to the seller for a breach of a title warranty, or may negotiate to settle third party claims with the proceeds of a title insurance policy, and the filings noticing the lien are generally presumed to enable the contracting parties to exercise whatever rights they already had. A property owner's use of a tortious interference suit to enlarge a special warranty deed into a general warranty deed for transfer to a pendent lite purchaser at the expense of the purchase money creditor is facially inconsistent with the liberal construction the Texas Legislature has directed the state courts to apply, and is both jurisdictionally and constitutionally problematic where, as here, the only source of injury alleged is lis pendens speech by a legal malpractice claimant and adjudged purchase money creditor. *Cf., Archer v. Blakemore.* 367 S.W.2d 402, (Tex. App. Austin -1963); *see also, Dynamic Publ'g & Distrib. L.L.C. v. Unitec Indus. Center Prop. Owners Ass'n, Inc.,* 167 S.W.3d 341 (Tex. App.— San Antonio 2005, no pet.); Munson v. Milton, 948 S.W.2d 813 (Tex. App.—San Antonio 1997, writ denied); *Pebble Beach Prop. Owners' Ass'n v. Sherer,* 2 S.W.3d 283 (Tex. App.—San Antonio 1999, pet. denied); *Giles v. Cardenas,* 697 S.W.2d 422 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

23

## ARGUMENT AND AUTHORITIES

**I.**     **The Trial Court Orders Under Review Apply An Unconstitutional Construction of The State's Interlocutory Appeal Statute In Section 51.014(b) Of The Texas Civil Practice And Remedies Code.**

**A.**     **The Open Courts Doctrine Of The Texas Constitution.**

The case presents issues important to the jurisprudence of Texas concerning the Interrelationship between the Open Courts Doctrine and the TCPA insofar as a compelling public policy justification exists for liberal measures to deter suspect applications of the TCPA mandate for automatic stay relief. *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306–07 (Tex.App.—Dallas 1992, no writ). The Texas Supreme Court has held that the language of the Open Courts Doctrine, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law," Tex. Const, art. I, section 13, provides a litigant a specific guaranty of a right of access to the courts that constitutes a substantial right . *Id.* The legislature cannot arbitrarily or unreasonably interfere with a litigant's right of access to the courts. *Id.* A law that practically takes away from either party to litigation the constitutional right to a fair and impartial trial in the courts denies a remedy by due course of law. *Id.* The legislature cannot abrogate the right to bring a well-established common law cause of action without a showing that the legislative basis for the statute outweighs the denial of the constitutionally guaranteed right of redress. *Id.* A litigant must show that he has a cognizable common law cause of action that the statute restricts. A litigant also must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Id.*

Consistent with *Criswell*, the trial court entered its order under color of the interlocutory appeal provisions of Section 51.014(a) and (b) of the civil practice and remedies code. The Legislature's intent to enact an automatic stay obligations is evident from the text of subsection

24

(c), which states that "A denial of a motion for summary judgment, special appearance, or plea to the jurisdiction .... is not subject to the automatic stay under Subsection (b) ..." The plain meaning of the words "automatic stay" in subsection (c) indicates that the Legislature intended to mandate stay provision analogous to those adjudicated by the Texas Supreme Court in *York, Id.*

Also consistent with *Criswell,* Appellant claims ownership of a prima facie common law right of action to quiet title to purchase money lien interests and restrictive covenants that run with the land. *Teal, Id.; cf., In the Matter of Energytec, Inc.,* — F.3d –, Case No. 12-41162 (5th Cir. Dec. 31, 2013). The underlying purchase money covenant undoubtedly affected the value and mode of enjoying the demised premises, in that the purchase was used to cover the down payment and in that property would not have been enjoyed by Moroco Ventures but for Appellant's decision to fund a part of the purchase price. *See, Westland Oil Development Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903 (Tex. 1982). As burdens on the subject property, the restrictive covenants of which Appellant is a beneficiary impact the property's value and potential use in the eyes of prospective buyers. *Id.* The second lien agreement executed by the parties in 2005 stated an intent that interests in recorded exceptions should run with the thing demised – the land - and the exceptions recorded in the first deed of trust and lien agreement lies squarely within the scope of the second deed of trust and lien agreement. *See, Inwood N. Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex. 1987). Both the first and second agreements also reflected the intent to bind the lien grantees and their assigns, and to burden a thing in existence – the land and its use. Id. When Bravenec purchased the property at foreclosure, he expressly specifically agreed by his acceptance of the trustees' deed to honor the exceptions notied in the first and second liens, so there is no question that Bravenec had notice. *Id.*

25

Lastly, regarding privity, the text of the first lien agreement manifests the general intent of Moroco Ventures to reserve a class of interests that includes purchase money interests, and to carve out those interests from the first lien assignment to Rampseck and his assigns. Since the burden of the latter covenant is on the property owner, the first lien grantee, and grantees of inferior interests, the privity requirement is met as to the succession of ownership of the burdened property when the second deed trustee conveyed to McKnight and Bravenec and when the first lien servicers subrogated first lien interests to them after the foreclosure. In short, Appellant is the owner of the benefit of recorded exceptions by virtue of horizontal privity of estate with the property owner and its first and second lien holders, and by virtue of vertical privity of estate as a successor in interest through Moroco Ventures at the time of second lien grant to McKnight and Bravenec see also, 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 60.04[3][c][iii] (horizontal privity), and § 60.04[3][c][iv] (2010) (vertical privity). Further, the documents creating the rights were all recorded. *Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.,* 945 S.W.2d 216, 218 (Tex. App. – San Antonio 1997, writ denied)). In summary, Appellant has a well settled, constitutionally protected, common law right of access to the courts, within the meaning of *York, Cooke,* and *Long Breach,* to file court pleadings and lis pendens notices. *Cf. Archer v. Blakemore, Id.* The issue presented for discussion is therefore whether the restriction of Appellant's common law right of action is unreasonable or arbitrary when balanced against the purpose and basis of the Legislature's grants of interlocutory appellate jurisdiction in Section 51. 014(a) and (b) of the Texas Civil Practice And Remedies Code.

**B.    Application Of the Governing Law**

Appellant disputes the reasonableness, and jurisdictional and constitutional grounds, of the restrictions the trial court imposed on his common law right of action to enforce purchase money liens. The text of the order states the following: "The Court finds that Courts have already

26

determined that the rightful owner of the Property is Edward Bravenec. This Court further finds that in Federal Court Cause No SA-11-CI-414 styled *Rowland Martin Jr. v. Charles Grehn et al,* the Court found that the legal and equitable title to the Property was vested in Edward L. Bravenec, and further that neither Rowland J. Martin Jr. nor the company he owned, Moroco Ventures, LLC or any successor in interests there to had any interest, legal or equitable in the Property … This Court further finds that despite judgments being rendered against Rowland J. Martin, Jr. that he continues to interfere and cloud the title to the Property or contact potential buyers and title companies to disrupt or disturb any potential sale of the property by its rightful owner…. Therefore it is the ORDER of this court that Rowland J. Martin [is] hereby enjoined by from filing any document whatsoever with this court, any other court, the Bexar County Clerk's Deed Records Office that in any way relates to Plaintiffs of the real property … It is ORDERED that the Bexar County Clerk cancel, expunge, or otherwise render ineffective any document filed by Rowland J. Martin Jr. entitled 'Notice of Apparent Liability For Purchase money Claims,' … 'Perfected Lis Pendens' or any like titled document." Temporary Injunction Order, at p. 1 - 2.

In *McKaskey v. McCall,* 236 S.W. 432 (Tex. App. – El Paso, 1920), the court of appeals concluded in an appeal for fundamental error involving lis pendens notices that the judgment upholding the appellees' lis pendens notice that had been rendered by the trial court could not be sustained, and was fundamental error, on the issues submitted in the appellees' pleading. "The trial court does not indicate in his order, overruling the motion for a new trial, the ground upon which the order was made, nor does the ground upon which the order was made appear elsewhere in the record… The facts relied upon as distinguished from the conclusions of the pleader that he has a defense must be stated in the motion…. The first conclusion of law that the contract is void for uncertainty is not made a ground in the petition for cancelling the lease." Id.

27

Applied to the latter undisputed evidence, *McKaskey* supports three points of error demonstrating that the trial court misapplied the interlocutory appeal statute in Section 51.014(b) on July 17, 2014 and again on December 8, 2014, and that the resulting restrictions on Appellant's common law rights under color of the state's interlocutory appeal statute are jurisdictionally and constitutionally improper when balanced against the stated purposes of the Texas Citizens Participation Act and the Texas Civil Practice And Remedies Code. *York, Id.*

Regarding the first point of error, the trail court's decision to give precedence to proceedings on Appellees application for temporary injunctive relief under color of an under-inclusive reading of the interlocutory appeal statute arbitrarily defeated the purpose of the Act. The purpose of amending the interlocutory appeal statute to include provisions for TCPA stay requirements is to effectuate the Act's cost savings and participatory objectives. Not unlike the automatic stay provisions discussed in *York*, the TCPA's automatic stay augment the benefit of the interlocutory appeal by accelerating the disposition of dismissal controversies, and by structurally limiting the cost burden for the defendant of defending the contested suit. Here, the trial court's decision to prioritize temporary injunction relief for the Plaintiff of a contested suit, and to suspend automatic stay requirements, momentarily turned the TCPA and its purpose on their head. In theory, the doctrine of estoppel by deed can and should be applied to preclude Appellees' from denying the existence of recorded exceptions to conveyances and warranties that run with the land. In practice, the trial court's failure to promptly implement TCPA automatic stay requirements temporarily disfranchised rights to speech and petition that the TCPA was designed to protect in its injunction order, and later empowered the contested plaintiffs to attempt to commence the very trial proceedings that the Act was clearly designed to postpone. Although the impact of the departure is mitigated in this case by the disintegration of

28

the temporary injunction by its own terms, Appellees' succeeded both in increasing the cost of defending the underlying suit, and in postponing the ettlement of Appellant's claims.

Regarding the second point of error, the restrictions imposed on Appellant's access to the judicial process under color of the interlocutory appeal statute was not narrowly tailored to further a legitimate governmental interest. *United Healthcare Ins. Co. v. Davis*, 602 F.3d 618, 627 (5th Cir. 2010).[2] An existing restrictive covenant of record was impaired by the trial court's application of the 2013 interlocutory appeal amendments to the civil practice and remedies code. The text of the order justifies measures to preclude the continued assertions of a right to redemption of the subject property by successors in interest of Moroco Ventures, but nowhere does it specifically address enforcement of the various restrictive covenants that survived the foreclosure sale; nor does it explain the justification for applying measures to deter supposed abuse of the judicial process in the latter context. *Cf., Goad v Zuehl Airport Flying Community Owners Association, Inc.,* Case No. 04-11-00293-CV (Tex. App. – San Antonio, 2012) (reversing vexatious litigant finding). In fact, each and every decretal clause in the injunction order disfranchised civil procedures that are essential for due process and due course of law in connection with the anticipated trial. Lastly, no legitimate governmental purpose is served by applying the interlocutory appeal statute to allow Appellees to enlarge the special warranty estate they acquired in the subject property into a general warranty estate without compensation for the value of the purchase money interests. Overall, the trial court's process was equivalent in effect to a *Criswell* turnover order as applied to a chose of action to enforce purchase money lien

---

[2]    *Cf., Article I, Section 10, Clause 1* ("No State shall...pass any...Law impairing the Obligation of Contracts"). Contracts Clause claims are analyzed using a three-step analysis: (1) the state law must have substantially impaired a contractual relationship; (2) the state's asserted justification for the impairment must serve a significant and legitimate public purpose; and (3) the challenged law must be reasonably necessary to achieve the public purpose. *United Healthcare, Id.*

29

interests. *Cf., Energy Reserves Group, Inc. v. Kansas Power and Light Co*, 459 U.S. 400 (1983) (applying three-part test with a threshold inquiry into "substantial impairment").

Regarding the third point of error, the trial court's application of the interlocutory appeal statute irrationally abrogated the state's judicial policy *against* immunitizing estate attorneys from accountability and putative liability for legal malpractice. This Court's decision in *Zuniga v. Grose, Locke, & Hebdon*, 878 S.W. 2d 313, 318 (Tex. App. San Antonio 1994, writ ref'd), underscores the need for measures to deter and sanction violations of TCPA's automatic stay provisions comparable to those applied in other settings:

> For the law to countenance ... abrupt and shameless shift[s] of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth ... On balance, we conclude that the costs to the legal system ... outweigh its benefits. We hold that [the] assignment ... is invalid.

Id. Not unlike *Zuniga,* the fact situation here revolves around an executor deed assignment to an uninterested third party relating back to an unresolved legal malpractice dispute and a pattern of role-reversing conduct by the assignor-attorney cross-defendant.[3] In fact, Bravenec was a formally undischarged attorney of record in Probate Case No. 2001-PC-1263 until March 19, 2014, and remains putatively accountable to Appellant along with his firm on that basis. *In re Liberty Trust Co.*, 130 B.R. 467 (W.D. Tex. 1991) (disregarding informal withdrawal of

---

[3]     To prove a prima facie case of legal malpractice, a litigant must demonstrate "that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Belt, Id.* Arguably, McKnight and bravenec failure to contest tax suits against heirs of the Estate of King in proceedings involving property of the estate, coupled with the withholding of compensation for a purchase money lien claim arising from a second lien transaction that originated during an attorney client relationship, satisfies a prima facie case for legal malpractice. *Cf. Archer v. Blakemore, Id.* (cancellation of deed used for in-kind payment of legal expenses where land value exceeded quantum merit value of services provided); *see also, Gulf Coast Investment Corp. v. Brown*, 821 S.W.2d 159 (Tex. 1991) (legal malpractice claim and equitable tolling privileges arising from foreclosure sale).

undischarged attorney for status determination purposes). Allowing a former estate attorney of record to profit from an assignment without consideration of purchase money liens that existed during the attorney client relationship clearly discourages, rather than encourages, accountability for conduct during the attorney client relationship. *Cf., Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.,* Cause No 04-0681 (May 5, 2006) (noting that denying personal representatives the right to sue for estate-planning malpractice would "essentially immunize estate-planning attorneys from liability for breaching their duties to their clients."); and *Bravenec v. Flores*, Case No. 04-11-00444-CV (Tex. App. – San Antonio, 2013).

In conclusion, the three above cited points of error suggest that the restrictions resulting from the trial court's application of the interlocutory appeal statute was both arbitrary and unreasonable when balanced against the objective of the TCPA's 2013 interlocutory appeal amendment in safeguarding of expression and participatory interests of the citizen in the right to free speech and to petition, Tex. Civ. Prac. & Rem. Code § 27.002; *see Yiamouyjannis v. Thompson*, 764 S.W.2d 338, 340 (Tex. App.–San Antonio, 1988, writ denied), and that the continuation of proceedings for temporary injunctive relief after the automatic stay took effect violated the Open Courts Doctrine as applied in *Criswell, Id. See, Emeritus Corp. v. Ofczarzak*, 198 S.W.3d 222, 225-26 (Tex. App.- San Antonio 2006, no pet.),

## II. The Trial Court Contravened Rule 683's Specificity Requirements

### A. The Applicable Law

To obtain a temporary injunction, an applicant must show: (1) a cause of action, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Under the rules that a temporary injunction is an extraordinary remedy, the purpose of which is to preserve the status quo of the litigation's subject matter on specific terms pending a trial on

31

the merits. It follows therefore that the appeal is jurisdictionally moot in part due to the entry and disintegration of the injunction during the pendency of an automatic stay. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002).

Even if Appellees' application for temporary injunction is considered on the merits, the temporary injunction applicant bears the burden of production, and must offer evidence on each of these elements. *See In re Tex. Natural Res. Conservation Comm'n,* 85 S.W.3d 201, 204 (Tex. 2002). Further, the governing law does not permit temporary injunctive relief without the showing of irreparable harm otherwise required by equity. *Town of Palm Valley v. Johnson,* 87 S.W.3d 110, 111 (Tex. 2001) (per curiam) (holding that an applicant seeking a temporary injunction was not exempt from traditional requirement of irreparable harm). The decision to grant or deny an injunction rests within the trial court's sound discretion. Butnaru, 84 S.W.3d at 204. A court of appeals will reverse the trial court's ruling only if it has abused that discretion. Id. A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC,* 328 S.W.3d 883, 888 (Tex. 2010).

Appellate review of the trial court's decision is limited to the validity of its temporary injunction order. Davis v. Huey, 571 S.W.2d 859, 861–62 (Tex. 1978). With respect to legal requirements, however, "[t]he law demands clear and complete orders granting injunctions." *Webb v. Glenbrook Owners' Ass'n.* 298 S.W. 3d 374, 384 (Tex. App. – Dallas 2009, no pet.). "The injunction must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Drew v. Unauthorized Practice of Law Comm.,* 970 S.W. 2d 790 , 793 (Tex. App. Austin – Dallas – 1979, no writ.). As general rule, "an injunction should inform a defendant of the acts

32

he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing [and] should not be framed so broadly as to prohibit the enjoyment of lawful rights." *Hellinic Inv. V. Kroger Co.,* 766 S.W. 2d 861, 866 (Tex. App. – Houston [1st Dist.] 1977, no writ).

## B. The Injunctive Order Rests On Conclusions Of Law Arising From A Pleading That Failed To State A Justiciable Cause Of Action (Fourth Point Of Error).

"To obtain an injunction a party must first assert a cause of action." *Cooper v. Litton Loan Servicing, LP,* 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied) (citing *Brittingham v. Ayala,* 995 S.W.2d 199, 201 (Tex. App.—San Antonio 1999, pet. denied)). The cause of action plead by Appellees deprived fair notice of a claim upon which relief can be granted because an injunction is not a cause of action in itself but an equitable remedy, Id., while an application to cancel a lis pendens does not qualify as a cause of action at law for affirmative relief standing alone because the purpose of the notice is simply to disclose pending litigation. *Taliaferro v. Smith,* 804 S.W.2d 548, 550 (Tex. App.—Houston [14th Dist.] 1991, no writ). Applying the latter authorities, Appellant asserts that the trial court erred in granting injunctive relief unsupported by pleading with allegations to support a recognized cause of action. *Manuel v. Spector,* 712 S.W.2d 219, 221 (Tex. App.—San Antonio 1986, orig. proceeding).

A trial court has no power to enter judgments and orders on the behalf of the court in which he or she sits if that court lacks jurisdiction over the parties, over the subject matter and legal capacity to act. *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304 (Tex.2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it." ); *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 863 (Tex. 2010) (subject matter and capacity to act). "A court's jurisdiction to render judgment is invoked by pleadings, and a judgment unsupported by pleadings is void." *Moneyhon v. Moneyhon,* 278 S.W.3d 874, 878-9 (Tex.

33

App.— Houston [14th Dist.] 2009, no pet.)("petition must give fair and adequate notice of the claims being asserted..." and it was error to grant relief on a breach of duty when no claim of breach was plead or tried by consent).

At the temporary injunction hearing, Appellees' asserted the conclusion that Appellant's interests in the subject property were extinguished by res judicata. The proof, however, consisted solely of Appellant's original complain in *Martin v. Grehn*, Case No. SA 11-CV-0414 (W.D. Tex. 2013), along with numerous other statements unsupported by reference to chain of title evidence or recorded exceptions to conveyances and warranties, thus depriving Appellanbt notice of the true nature of their claim. "Texas is a 'fair notice' state, which means that all parties are entitled to fair notice of a claim." *In re M.B.B-Y., No. 04-10-00541-CV, 2011 LEXIS 2520,* (Tex. App.—San Antonio, April 6, 2011, no pet.) (mem. op.). The "fair notice" standard for pleading looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant, and holds that a petition is adequately pleaded only if one can reasonably infer a cause of action from what is stated in the petition. Contrary to the rule, the inference here is that Appellees failed to plead, and the trial court failed to adjudicate, a cause of action for tortuous interference upon which relief can be granted. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 896 (Tex. 2000). *Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex. 1993).[4]

---

[4] Mere averments contained in pleadings are not proper evidence and will not sustain a trial court's action. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex. 1995) ("Generally, pleadings are not competent evidence, even if sworn or verified.").In *Bart Turner & Associates v. Krenke,* No. 3:13-cv-2921-L, 2014 WL 1315896 (N.D.Tex. Mar. 31, 2014), the court found that allegations which it described as "bare-bone" and "threadbare " were wholly conclusory, and did not meet the "fair-notice" standard of Tex. R. Civ. P. 91(a). See also, *GoDaddy.com v. Toups,* No. 09-13-00285-CV, 2014 WL 1389776 (Tex.App.-Beaumont Apr. 10, 2014) (unpublished) (noting that Rule 91a is analogous to Federal Rule 12(b)(6) and citing case law applying Rule 12(b)(6) to set forth the standard for a motion to dismiss).

**C.    The Res Judicata Provisions Of The Order On July 17, 2014 Do Not Establish A Probable Right To Relief Based On The Absence Of Restrictive Covenants That Run With The Land, And Depart Both From Fifth Circuit Jurisprudence (Fifth Point Of Error).**

Appellant relies on Plaintiff's Exhjbit ___ and Defendant's Exhibit ___ to refute the contention that the trial court has jurisdiction to give res judicata effect to the federal court judgment in SA 11-CV-0414 as an adverse ruling on purchase money issues. Plaintiff's Exhibit ___ consisting of a judgment by the Hon. Harry Lee Hudspeth in Case No. SA 11-CV-0414 establishes that the court of competent jurisdiction for the transaction that Appellant litigated as successor in interest to Moroco Ventures, LLC is the U.S. District Court for the Western District Of Texas. Defendant's Exhibit ___ consisting of a judgment by the Hon. Leif M. Clark in Case No. 05-80116 indicates that the court of competent jurisdiction for the transaction Appellant litigated as purchase money creditor of Moroco Ventures, LLC and its assigns is the U.S. Bankruptcy Court for the Western District of Texas. Here, there were few or no pleadings citing legal authority to support that conclusions of law about res judicata and vexatious litigant status that appear in the decretal clauses of the trial court's orders. This runs afoul of Rule 91(a)'s fair notice requirements. For the most part, these arguments are fatally flawed because they improperly conflate multiple property transactions, involving multiple parties with different rights and different cases in different courts. The Fifth Circuit has expressed disapproved this approve to res judicata argument. *See, Anderson v. Law Firm of Shorty, Dooley & Hall*, (E.D. La. Feb 17, 2010) affirmed in 393 Fed. Appx. 214 (5th Cir. Aug. 26, 2010). Appellees' arguments about res judicata and vexatisou litigant status are entirely unavailing when considered in the context of their accountability under the doctrine of estoppel by deed.

In order determine whether two suits involve the same cause of action, the federal courts use the "transactional" test. *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 571

35

(Cir. 5th 2005). Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. Id. at 395-96. Whether a group of facts constitutes a "transaction" or "series of transactions" is determined pragmatically, weighing whether the facts are related in time, space, origin, or motivation. Id. The critical issue is whether the two actions are based on the "same nucleus of operative facts." Id. The res judicata effect of a prior judgment is a question of law that a court reviews de novo. *Proctor & Gamble Co., v. Amway Corp.*, 242 F. 3d 539, 546 (5th Cir. 2001). A judgment adjudicating one transaction has no res judicata effect to preclude enforcement of rights arising from a transaction founded on a separate and collateral nucleus of facts. *Hornbeck Offshore Servs., L.L.C. v. Salazar*, No. 11–30936, 2013 WL 1437675 (5th Cir. Apr. 9, 2013) (declining to apply res judicata effect to post-order transaction).

In reviewing the trial court's orders on July 17, 2014 under the governing law of res judicata, it is clear that the trial court made no attempt to pragmatically differentiate the lis pendens transactions forming the basis of Appellees' toritious interference claim, and that the divergence of operative facts is fatal to Appellees' res judicata analysis. The parties to the second lien transaction recorded in 2005, which involved McKnight and Bravenec as lien assignees, were not identical with the parties to the purchase money transaction executed in 2003, which involved only the seller Roy Ramspeck. Whether federal district court order on post-judgment lis pendens notices in the prior action in *Martin v. Grehn*, Case No. 13-50070 (5th Cir. 2013) was rendered by a federal court of competent jurisdiction is an open question under on-going review in *Martin. v. Bravenec,* Case No. 14-50093 (5th Cir., Notice of Appeal filed January 27, 2014). The prior action in Martin v. Grehn was continued without a final judgment in Martin v.

36

Bravenec with respect to federal court jurisdiction over lis pendens notices referencing Probate Case No. 2001-PC-1263. Whereas the litigation in *Martin v. Grehn* adjudicated a transaction involving lien rights granted by Moroco Ventures, and foreclosure rights executed by McKnight and Bravenec; the transaction referenced in the lis pendens notices in the instant litigation involves purchase money interests that were reserved in recorded exceptions to conveyances and warranties.

Thus, the trial court's order are fatally flawed in that there was no pragmatic weighing of the factors pertinent to time, space, origin, or motivation indicated by the trial court's orders on July 17, 2014. Under the circumstances, moreover, the federal law rule of decision is supplied not by the doctrine of res judicata, but by the law of the case doctrine which confers discretion to disregard a prior misapplication of law in order to avoid manifest injustice. Thus, the trial court erred in deferring to the lower federal courts' choice of law on issues about contractual interference and vexatious litigant status that are fundamentally unrelated to the deed exceptions and purchase money transactions that from the basis of Appellees' contractual obligations under the doctrine of estoppels by deed. Appellees have not shown that the failure to issue the injunction would result in irreparable harm to any probable right of recovery they had on their cause of action or that Appellant's conduct would render any judgment they might obtain ineffectual. Therefore the Court should reverse the trial court, dissolve the injunction, and declare the trial court's order void.

**D.    The Purchase Money Provisions Of The Injunction Order Have No Specific Basis In The Pleadings And Testimony Of Record, And Instead Rest Solely On Unsupported Conclusions Of Law And Unwarranted Presumptions About Irreparable Harm (Sixth Point Of Error).**

Lastly, there were also no pleadings to support the conclusion that restrictions were necessary because the outcome would have been different if the lis pendens filings and purchase

37

money lien pleadings in 2014 had never been filed. "[A]n injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." *Markel v. World Flight, Inc.,* 938 S.W.2d 74, 80 (Tex. App.—San Antonio 1996, no writ). Injunctive relief is ordinarily available if a wrongful act gives rise to imminent and irreparable harm for which there is no adequate remedy at law. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n,* 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). To obtain injunctive relief, one must generally establish the existence of imminent harm. *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.,* 975 S.W.2d 546, 554 (Tex. 1998); ). "Fear of a possible injury is not sufficient." *Frey v. DeCordova Bend Estates Owners Ass'n,* 647 S.W.2d 246, 248 (Tex. 1983).

A "purchaser pendente lite" sustains no harm from a lis pendens notice filed during the pendency of quiet title litigation. *Rio Bravo Oil Co. v. Hebert,* 106 S.W.2d 242, 247 (Tex. 1937). Although the general rule is that "a covenant to pay an encumbrance does not run with the land," *El Paso Refinery, LP v. TRMI Holdings, Inc.* (In re El Paso Refinery, LP), 302 F.3d 343 (5th Cir. 2002), a property owner is generally charged with actual notice where recitals in his chain of title indicate title is encumbered by restrictive covenants running with the law, and that the actual notice so afforded renders moot the issue of whether constructive notice was achieved through a lis pendens filing, *see e.g. Urban Renewal Agency, Id.* (finding trial court's judgment was improper, and reversing so as to enjoin use of property in violation of covenants running with land); Davis v. Huey, 620 S.W.2d 561, 567 (Tex. 1981) (constructive of actual notice required). Thus, where a creditor who has provided purchase money has recorded an express lien on the land, the general rule is that he holds the superior title until purchase money debts are paid which cannot be defeated by foreclosure of an inferior security instrument or statute of limitations bars.

38

*Johnson v. Lockhart, Id.* The omission of pleadings to address these dispositive points of law is indicative of a fatal legal insufficiency in the Appellees' pleadings. Lastly, the available evidence shows that Appellee Bravenec secured temporary injunctive relief in May 2914 by raising fact issues about Appellant's alleged indigence which he later abandoned in order to oppose Appellant's formal indigency affidavit. The latter admission against interest during the indigency contest supports the conclusion that the injunction order was legally insufficient as a basis for finding irreparable harm caused by the filing of purchase money lien notices. *Goad, Id.*

## III.    The Trial Court Misapplied Law Governing TCPA Burden Shifting Procedures.

### A.    The Applicable Law.

Appellant submits that Appellees are also grossly mistaken in their assumption of law that a case for tortious interference lies - during the pendency of a TCPA automatic stay - to exempt a contract of sale from TCPA compliance at the expense of a recorded purchase money lien of a former client that runs with the land. The Texas Citizens Participation Act was enacted "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. (Tab A.) Courts are instructed to "construe [the statute] liberally to effectuate its purpose and intent fully." Id. § 27.011(b). Against this backdrop, the Court's inquiry in this review is twofold:

    (i)    Did Appellant show "by a preponderance of the evidence that plaintiffs' suit [wa]s based on, relate[d] to, or [wa]s in response to exercise of the right of free speech...?"

    (ii)    Did plaintiffs marshal "clear and specific evidence of a prima facie case for each essential element of the claim in question?"

TEX. CIV. PRAC. & REM. CODE § 27.005(b) and (c). Both of these are questions of law this Court reviews de novo. *Farias v. Garza,* 426 S.W.3d 808, 820 (Tex. App.—San Antonio 2014, pet. filed May 6, 2014); *Sierra Club v. Andrews County,* 418 S.W.3d 711, 715 (Tex. App.—El Paso 2013, pet. filed March 24, 2014).

**B.    The Face Of Appellees' Pleadings Establish That Their Suit Is Based On, Related To, And In Response To The Exercise Of Rights To Free Speech And To Petition (Seventh Point Of Error).**

With only two exceptions, the TCPA provides that a trial court "shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of ... the right of free speech." *Farias, Id.; Rehak Creative Servs., Inc. v. Witt,* 404 S.W.3d 716, 723 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The exception: "The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question. Id. at 723-24; TCPA § 27.005(c); *see also Farias,* 426 S.W.3d at 813. (reversing trial court's refusal to dismiss). The other exception is applicable to exemptions from the Act, for which the proponent of the exemption bears the burden of proof. "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." TCPA § 27.001(3); *Rehak,* 404 S.W.3d at 723. Among other things, a "'[m]atter of public concern' includes an issue related to ... the quality of services and government ...." Id. § 27.001(7); *Rehak,* 404 S.W.3d at 723.

Under the reasoning followed in *Farias,* Appellant's threshold burden to demonstrate by a preponderance of the evidence that plaintiffs' claims are "based on, relate to, or are in response to appellants' exercise of the right of free speech" was met at the hearing on July 9, 2014 by the admission into evidence of his "Perfected Lis Pendens Noticing Purchase Money Lien Claims."

40

*Young v. Krantz,* 2014 Tex. App. LEXIS 5703 at *6 (Tex. App.—Dallas 2014, n.p.h.); *Better Bus. Bureau of Metropolitan Dallas v. BH DFW, Inc.,* 402 S.W.3d 299, 307 (Tex. App.—Dallas 2013, pet. denied). Further, Appellees' petition specifically alleging that their suit was based on lis pendens speech involving legal services and litigation alleging improprieties by the judicial branches of state and federal government government in *Martin v. Grehn,* Case No. 14-50070, essentially admits that their suit targets speech and petitions for judicial redress of grievances. Thus, the preponderant evidence consisting of Appellant's perfected lis pendens notice and Appellees' pleadings of record and litigation-related exhibits together indisputably establish that the rights implicated by Appellees suit clearly touch and concern multiple matters of public concern. The major issue in Martin v Grehn, though not a live issue in this case, arise from alleged forum shopping by McKnight and Bravenec in the court of the presiding judge of the foreclosure proceeding in 2006, who coincidentally received campaign contributions from Bravenec during the term in which the foreclosure occurred. Whether a judge has an interest in the subject matter of case before him represents a constitutional issue of public concern of the same nature as the speech interests this Court intervened to protect in *Farias, Id.; cf., Rocha v. Ahmad,* 662 S.W.2d 77 (Tex. App.--San Antonio 1983, no writ) (noting theoretical possibility of financial interest disqualification based on campaign contribution by a party who is an attorney). A litigant's liberty interests in free speech and the right to petition are particularly protected as a matter of public concern "[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him..." *Wisconsin v. Constantinueau,* 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L.Ed. 2d 515 (1966); *cf., Young,* 2014 Tex. App. LEXIS 5703 at *14.

In response, Appellees failed to rebut the applicability of TCPA safeguards. *Farias, Id.*

At the temporary injunction hearing, Appellees implied that TCPA protection is unavailable on

41

the facts of this case because Appellant's lis pendens speech was subject to preclusion under the doctrine of res judicata, and that the subject matter of the real estate controversy is exempt from coverage. The flawed logic of plaintiffs' argument has already been considered and rejected by the Courts that have reviewed the question. *In re Lipsky,* 411 S.W.3d 530, 543 (Tex. App.—Fort Worth 2013, orig. proceeding [mand. pending]) [emphasis added]; *see also Kinney v. BCG Atty. Search, Inc.,* No. 03-12-00579-CV, 2014 Tex. App. LEXIS 3998, at \*15-16 (Tex. App.—Austin, April 11, 2014, n.p.h.). Further, the commercial exemption is applicable only where the defendant is a market participant engaged in a commercial transaction, *Newspaper Holdings, Id.,* a threshold criteria clearly not met by this case. *Id.* Under the latter circumstances, Appellees cannot escape their statutory burden to bring forth "clear and specific evidence" below by arguing that Appellant must first prove a negative —that his alleged lis pendens speech and litigation were non-frivolous and mnon-commercial. Because the preponderant evidence indisputably establishes that plaintiffs' suit fell within the scope of the TCPA, the burden shifted to plaintiffs to establish by "clear and specific evidence" a prima facie case for each essential element of their claims. *Farias, Id.*

### C.   Appellees Failed To Offer "Clear And Specific Evidence" To Substantiate Each Element Of Their Cause Of Action (Eight Point Of Error).

#### 1.   The Applicable Law

The TCOA required Appellees to bring forth "clear and specific" evidence that, unaided by inferences, would establish each essential element of each their claims. *Farias, Id.* The TCPA requires this Court to dismiss plaintiffs' claims unless plaintiffs brought forth clear and specific evidence of a prima facie case for each essential element of the claim in question. TCPA § 27.005(c); *Farias,* 426 S.W.3d at 813 (reversing trial court's refusal to dismiss); *Rehak,* 404 S.W.3d at 723. Whether the trial court should have granted a TCPA motion to dismiss is a

question of law based on the evidence before the trial court. TCPA § 27.006(a); *Sierra Club*, 418 S.W.3d at 720. On questions of law such as these, this Court renders the judgment that the trial court should have rendered. TEX. R. APP. P. 43.3; *Sierra Club*, 418 S.W.3d at 720.

The TCPA provides no guidance as to the quantum of proof necessary to constitute "clear and specific evidence," therefore in *Farias* the Court gave these terms their ordinary meaning: " 'Clear' means 'free from obscurity or ambiguity,' 'easily understood,' 'free from doubt' or 'sure.' 'Specific means 'constituting or falling into a specific category,' 'free form ambiguity' or 'accurate.' 'Clear and specific has also been described as evidence that is 'unaided by presumptions, inferences, or intendments." *Farias, Id.* at p. 813-814. *See Rehak*, 404 S.W.3d at 726. ("clear and specific evidence" requirement means that the non-movant must satisfy an "elevated" evidentiary standard under § 27.005). The operative standard is whether plaintiffs brought forth "a minimum quantum of clear and specific evidence that, unaided by inferences, would establish each essential element of the claim in question if no contrary evidence is offered." <u>*Farias,*</u> 426 S.W.3d at 814 [emphasis added], *citing Duncan v. Butterowe, Inc.,* 474 S.W.2d 619, 621 (Tex. App.—Houston [14th Dist.] 1971, no writ).[5]

## 2. Application Of The Governing Law

The sufficiency of the Appellees' pleadings and the trial court's non-dismissal order is controlled by case law authority in *Avila v. Larrea,* 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied) (applying TCPA case to trial court denial of motion to dismiss legal action in response to criticism about the quality of legal services), and *Newspaper Holdings, Id.* The *Avila*

---

[5] A plurality of courts hold that adverse inferences may not be considered in determining whether "clear and specific evidence" has been produced to overcome a motion to dismiss under the Citizens Participation Act. See, Walker v. Schion, 420 S.W.3d 454, 457 (Tex. App.—Houston [14th Dist.] 2014, n.p.h.); Rio Grande H2O Guardian v. Robert Muller Family P'ship. Ltd., No. 04-13-00441-CV, 2014 WL 309776, at *2 (Tex. App.—San Antonio January 29, 2014, n.p.h.); Sierra Club, 418 S.W.3d at 715 Fitzmaurice v. Jones, 417 S.W.3d 627, 632 (Tex. App.—Houston [14th Dist.] 2013, no pet.); Alphonso v. Deshotel, 417 S.W.3d 194, 197-98 (Tex. App.—El Paso 2013, no pet.); and Rehak, 404 S.W.3d at 727.

court held that a party engaged in speech about the quality of services offered in the marketplace is entitled to TCPA protection, even when the content of the speech relates to legal services. *Avila, Id.* The *Newspaper Holdings* court held that under the law tortious interference, "merely inducing a contract obligor to do what it has a right to do is not actionable interference." Id. The *Newspaper Holdings* court reversed and rendered dismissal relief there because "Nothing in the record suggests that [appellants] influenced the [third party contractors] to do anything other than exercise [their] option[s]. [Plaintiffs] therefore fail to sustain their burden to make a prima facie case of interference with a contractual obligation." *Id.* If Appellant is correct in his contention that the law of tortuous intereference does not recognize a indepdent cause of action for lis pendens abuses, the Appellees entire case is a non sequitur for TCOA purposes. But based on the Court's ruling in *Farias,* even if such a cause of action is found to exist, Appellees failed to substantiate it with proof supporting "each element of every claim asserted with clear and specific evidence." TEX. CIV. PRAC. & REM. CODE § 27.005(b), (c); Farias, 426 S.W.3d at 813 [emphasis added].

**Contractual Rights.** The threshold element for a case of tortuous interference with contractual relations calls for proof of an existing contract. *Newspaper Holdings, Id.* In their original petition, Appellees alleged that "Martin's continued filings of lis pendens and other documents, all without merit, have prevented Plaintiff from selling 1216 West Ave. to a buyer since September 2013. A title company refuses to insure the transaction until a lis pendens is removed." *Plaintiff's Original Petition, at para. 20.* However, deed records referring to Torralba Properties filed by Bravenec after the hearing on July 9, 2014 suggest that Appellees erroneously plead interference with an existing contract, when in fact the contract contemplated by the tortuous interference claim they plead was either non-existent or executory at the time the trial

44

court first granted temporary injunctive relief on May 13, 2014 and later on July 9, 2014. See Appendix. If so, Plaintiffs' pleading of tortious interference with contractual relations necessarily fails because it does not make clear whether plaintiffs allege interference with existing contracts or interference with prospective business relations—distinct torts of which the elements are different. The cognizable evidence of record on contractual rights consists of recorded exceptions and restrictive covenants in favor of Appellant's purchase money lien claim from which one can reasonably infer that any contract claimed by Bravenec is executor in nature.

In either case, Appellees references to "a buyer" and a title company" are entirely unsupported evidence - clear and specific or otherwise - to substantiate the contract element of the tortuous interference claim. Here as in *McKaskey*, Appellees' pleadings of record refer to other litigation but fail in those references to demonstrate the absence of restrictive covenants on various points for which they bear the burden of proof, and in fact, the docket evidence from *Martin v. Grehn* they rely upon for affirmative relief specifically confirms the existence of recorded exceptions to conveyances and warranties. On May 13, 2014, for example, Appellees commenced their suit by alleging that Appellant had filed notices in deed records and had also communicated directly with an unnamed contracting party whom they identified as the original pendent lite purchaser. On July 9, 2014, Appellees tendered docket records from in *Martin v. Grehn* that specifically refer to recorded exceptions, and simultaneously waived objections to the admission of Judge Clark's order for the bankruptcy court of August 10, 2012. On July 17, 2014 and December 8, 2014, Appellees argued anecdotally that they had no duty to comply with automatic stay requirements in Section 51.014(b) of the civil practice and remedies code, despite satisfaction of the statutory conditions of a notice of appeal and an order denying a TCPA motion to dismiss. According to Appellees, they were under no duty to refrain from proceeding because

45

no court had ordered them to do so. For all the reasons above, Appellees' theory of tortious interference fails on the first element the prima facie case because there is no evidence of a contract from which to reasonably establish that Appellant's alleged interfering conduct actually disabled the contracting parties from negotiating the sale of the subject property from Bravenec to Torralba Properties, Inc. or from securing releases from third party investors.

**Interference.** Regarding the element of interference, it is not clear what justification Appellees rely upon to support exceptions from the doctrine of estoppel by deed; and they offer no specific evidence to substantiate their presumptions about prudential standing to dispute purchase money covenants that arguably run with the land. *Teal, Id.* [6] In contrast, the proposed treatment of Appellant's prescriptive rights is fully consistent with the Court's analysis of restrictive covenants in *Stout v. Rhodes*, 373 S.W.2d 94 (Tex. Civ. App.—San Antonio 1963, writ ref'd n.r.e.) for two reasons. First, Stout merely held that the "subject to" clause referring to the restrictive covenant in that case were "words of notice," and that the "subject to" clause in question did not estop the grantee from disputing the validity and subject matter of the restrictive covenant in question. Unlike the restrictive covenant in *Stout*, the prescriptive rights here pertain to affirmative property interests in a purchase money estate that runs with the land. Second, the

---

[6]     Property "excepted" or "reserved" under a deed is "never included in the grant" and is "something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant." *King v. First Nat'l Bank of Wichita Falls*, 192 S.W.2d 260, 262 (Tex. 1946). *See Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672-676 (Tex. 1956) ("[A] warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed," in which case the "subject to" clause defines the estate conveyed, and the nature, extent and character of such estate). Reservations must be made by "clear language," and courts do not favor reservations by implication. *Monroe v. Scott*, 707 S.W.2d 132, 133 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). Exceptions "must identify, with reasonable certainty, the property to be excepted from the larger conveyance." *Angell v. Bailey*, 225 S.W.3d 834, 840 (Tex. App.—El Paso 2007, no pet.). However, special rules of construction are applied where special relationship are involved. *Estate of Griffin v. Sumner*, 604 S.W.2d 221, 228 (Tex..App.--San Antonio 1980, writ ref'd n.r.e.) ("different instruments whereby a single purpose or transaction is consummated are to be taken together as one contract.").

statute of limitations for asserting claims about breach or rescission of a deed covenant arguably precludes Appellees from asserting claims to rescind recorded exceptions that they earlier failed to timely assert after those claims first accrued in 2006. [7] Considering limitations bars, it appears that Bravenec and his assignees are both barred and collaterally precluded from contesting the enforceability of deed exceptions in any manner. Thus, there is no conflict between the proposed application of the doctrine of estoppel by deed here and the governing law in *Teal, Id.*

**Proximate Causation.** Regarding the element of proximate causation, there was no material evidence offer to support this element. In HMC Hotel, the Texas Supreme Court reviewed the resolution of liability questions that has been submitted to the jury under a proximate-cause standard, which was held to include two elements: cause in fact and foreseeability. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. and Research Corp.,* 299 S.W.3d 106, 122 (Tex. 2009). The cause-in-fact element is satisfied by proof that (1) the act was a substantial factor in bringing about the harm at issue, and (2) absent the act ("but for" the act), the harm would not have occurred. Id. These elements cannot be established by mere conjecture, guess, or speculation. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995). Applying the governing standard in HMC Hotels, the Supreme Court concluded from the record and despite expert testimony about the availability of title insurance that the deal failed

---

[7]     In May 2006, Bravenec executed the first of two post-petition foreclosure sales to seize the subject property of Moroco Ventures' Chapter 11 Bankruptcy Case No. 06-50829. McKnight and Bravenec contended that the foreclosure conferred constructive possession of the subject property to them, and converted the status of the debtor, Moroco Ventures, to that of a tenant at sufferance. The Bankruptcy Court invalidated the foreclosure, and awarded conditional lift stay relief in lieu of claims breach or rescission of title warranties which they could have asserted. Arguably, the running of the limitation period for asserting a claim to rescind the exceptions clause obligations began to run when the Bankruptcy Court entered its conditional lift stay order in Case No. 06-50829, and thereby effected a constructive eviction of the grantees sufficient to trigger the four year limitations period for title warranty claims. See also, Tex. Civ. Prac. & Rem.Code § 16.051 (four year period). On these facts, the limitations period for Appellees' exception clause claims accrued in May of 2006, and had already expired by December 5, 2014, and later on December 27, 2014, when the trial concluded mistakenly that Appellees had been harassed by lis pendens activities in derogation to its judgment.

not because of a letter transmitted by a defendant-lease tenant asserting the existence of a right of first refusal, but because the seller was unable to convince the tenant to voluntarily relinquish its rights. "The impossible does not become possible merely because someone wishes or works in vain to make it so. ... Testimony about what the insurers might have done differently is conclusory—"[b]are, baseless opinions [that] will not support a judgment even if there is no objection to their admission in evidence." *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009); *see also Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 183 (Tex. 1995), abrogated on other grounds by *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007) (testimony that a property owner could have avoided foreclosure had a tenant not vacated was "so weak as to do no more than create a mere surmise or suspicion of its existence and in legal effect, is no evidence."). The Supreme Court also concluded that the title-insurance witnesses' testimony about the effect of Host's letter on the transaction is not tantamount to testimony that the outcome would have been any different if the right of first refusal claimant had not sent its letter.

The record in this case does not support a departure from precedent in HMC Hotels. Appellees offered no evidence to rebut the inference that the cause of nondisbursement of escrow funds is the self-interest of the buyer and the title agent in reserving the right to hold Bravenec in default for conveying a general warranty deed subject to title defects and clouds on title.. The only testimony offered to support Appellees' theory of proximate causation at all consisted of statements by Bravenec unsupported by corroborating testimony from title company sources or any other source to show that the outcome in terms of the buyers liability would have been different if the lis pendens notices prior to 2014 had never been filed. Under the circumstances, Bravenec's own post-hearing deed records filings provide conclusive evidence that Appellees,

and their privies including Torralba Properties, LLC, the Texas Community Bank and J.J. Bravenec & Sons, were all able to exercise their rights without judicial intervention in a final order on Appellees' claim for tortious interference.[8]

**Damages.** Regarding damages, it is not clear what standing Appellees have to claim damages if the contract rights they possess or possessed are executor in nature. From Appellees allegations, it appears that the buyer who received a deeded interest in the subject property deposited the sale price with the closing agent, and that the title company that served as closing agent for the transfer has assumed the posture of a resulting trustee by refusing to insure the transaction and release the sales proceeds being held in escrow until the dispute concerning Appellant's purchase money interests is resolved. Because the proximate cause of the title company's refusal to disburse sales proceeds is Bravenec's own conduct is attempting to retain the value of sale without consideration for the release of Appellant's prescriptive rights, the grant of injunctive relief to enjoin lis pendens and lien notices will not remove the clouds on his transferee's special warranty deed estate. Bravenec's conduct is clearly wrongful from this perspective because he indisputably assented to the above referenced recorded exceptions to conveyances and warranties relating back to a purchase money transaction in 2003 are recorded in Bexar County Deed Records in Book 16601 Page 2158, and are reserved in the Second Deed of Trust conveyed on May 3, 2005, in the "Substitute Trustee's Deed" filed on October 3, 2006,

---

[8] " .... [E]ven if counsel were able to get a witness to agree to language reflecting the causation standard at issue in this case, the bare assertions of the title-insurance witnesses in response to carefully worded questions from counsel do not constitute evidence of causation. *See Jelinek v. Casas,* 328 S.W.3d 526, 538 (Tex. 2010) (quoting Pollock, 284 S.W.3d at 818) ("[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence."); *Burrow v. Arce,* 997 S.W.2d 229, 235 (Tex. 1999) ("But it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere ipse dixit of a credentialed witness."). There is no "magic language" that checks the causation box in a sufficiency-of-the-evidence review. *See Schaefer v. Tex. Empr's Ins. Ass'n,* 612 S.W.2d 199, 205 (Tex. 1980)."

49

and in the First Deed of Trust which they settled on October 31, 2016. As stated before, judicial support for Appellant's claim of a paramount interest in title is found in two orders of the Hon. Leif M. Clark, in Chapter 13 Case Bankruptcy Case No. 05-80116 and Adversary Case No. 11-5141. In 2012, the U.S. Bankruptcy Court entered an order in Bankruptcy Case No., 05-80116 noticing Defendant's claim as a third party purchase money creditor, and an order in Adversary Case 11-05141 remanding the 2006 foreclosure proceeding in the 57th Judicial District Court which Appellant had removed to the adversary case. See, Docketing Statement, Exhibits J and K. Although the U.S. District Court denied Appellant's motion for withdrawal of references in *Martin v. Bexar County,* et al, Case No. SA 12-CV-0998 (W.D. Tex. 2012), through which he sought to consolidate the purchase money claim with the claims in Case No. SA 11-CV-0414-HLH, the bankruptcy court order noticing purchase money rights was uncontested and was admitted into the record at the temporary injunction hearing below.

**D. Proactive Measures To Deter A Repetition Of The TCPA Violations That Occurred In This Case BY Similarly Situated Persons Are Both Necessary And Appropriate.**

As a general rule, a court's decision to impose sanctions under TCPA § 27.009 calls for reference to what justice and equity may require, what is reasonable, and what the Court determines to be a sufficient deterrent. See, *William's v Cordillera*, Civil Action No. 2:13-CV-124 (S.D. Tex. 2014); *see also, American Heritage Capital, LP. V. Dinal Gonzalez and Alan Gonzalez,* Cause No. DC-11-13741-C (68th Judicial District, Dallas County, 2012) (sanctions awarded); and *Rustic Cedar Cabins of Texas, Inc. v. John Cortell,* Cause No. 28-500 (12st Judicial District, Bastrop County, 2012) (sanctions awarded). In *Schlumberger Ltd. v. Rutherford*, 2014-13621, (127th Judicial District Court, Dallas County, 2013), a court imposed monetary sanctions totaling $600,000. The facts of this case indicate a repetition of conduct in bravenec v. Flores warranting strong measures to deter a repetition of the frivolous litigation and

exceptions to estoppels by deed as are alleged in this appeal. Cf., Texas Deceptive Trade Practices Act, Section 17.50(a)(2) (providing that a consumer may maintain an action under the Act for breach of an express or implied warranty.)

The trial court's disparaging findings about frivolous litigation, as reflected first in the trial court's temporary restraining order and later in temporary injunction order. are largely attributable to vexatious conduct in state and federal by the Appellees and their counsels of record, attorneys Ricardo Briones and Glenn Deadman. Nonetheless, even if one takes the Appellees' factual allegations as true, together with inferences reasonably drawn from them, Appellees pleadings would still not entitle them as a matte rof law to the tortuous interference relief they seek. The major fallacy in the Appellees' line of argument is their attempt to prosecute tortious interference relief, based on supposed lis pendens abuse, with the *ignoratio elenche* assertion that the federal courts adjudicated the separate and collateral issue about successorship interests claimed in the name of the Chapter 11 debtor. In short, Texas law provides no independent cause of action for lis pendens abuse, and even the statutorily authorized procedures for lis pendens cancellation are not meant to constitute a form of affirmative relief as would be the case if the Legislature intended to establish a substantive right to lis pendens cancellation.

Careful examination of other pleadings filed by Appellees' in state and federal court further supports the conclusion that no reasonably informed and impartial person could construe Appellees' pleas to res judicata and tortuous interference claims as well founded. In effect, Appellees asked the state courts, including the 285th Judicial District Court, to give res judicata effect to a federal court judgment in Case No. 13-50070, and a transaction involving a foreclosure sale in 2006 under a Second Deed Of Trust, in which Moroco Ventures, held a right

of redemption. Yet, their responding brief to the U.S. Court of Appeals in *Martin v. Bravenec* et al, Case No. 14-50093 in September of 2014 clearly indicates their subjective awareness that neither proposition is true: " ... the court denied Appellees' motion to expunge the third lis pendens ... because it found that it did not in fact have jurisdiction to do so," *Appellees' Responding Brief Fifth Circuit Case 14-50093, at p. 7.* Elsewhere they state that "[i]f the District Court was without the authority [to expunge post-judgment lis pendens notices] ... the issue has been mooted by the Probate Court of Bexar County, expunging [the third lis pendens notice]." *Appellees' Responding Brief in Fifth Circuit Case 14-50093, "Arguments And Authorities" at p. 6.* In fact, the U.S. Court of Appeals' rendition of judgment based on a fact situation where the losing plaintiff had no deeded interests and the prevailing defendant was not a party to a controversy about deed.exceptions for conveyances and warranties. *Kittrell v. City of Rockwell,* 526 F.2d 715, 716 (5th Cir. 1976). In short, Appellees' reliance on a federal court judgment for evidence of res judicata is entirely misplaced in the state court setting because their assertion of federal question jurisdiction in the federal district court is framed such that it can only be sustained by reference to a probate court order decided after the district court had already rendered the federal judgment in question.

On various other occasions, Appellees offended *Zuniga's* public policy against conduct degrading to the legal profession by reversing course on factual allegations without any plausible legal justification. On May 23, 2014, Appellees alleged in support of their request for temporary restraining orders that "harm to Plaintiff is irreparable if the injunction is not granted because because a money judgment cannot be successfully executed against Martin, an indigent person." *Plaintiff's Original Petition, at para. 29.* Contrary to their original position, Appellees later contested Appellant's indigency at the hearing on or about August 14, 2014. Similarly, on May

23, 2014, Appellees represented to the trial court that the alleged tortuous conduct consisted of the filing of lis pendens notices and similar instruments in Bexar County Deed Records. On July 1, 2014, Appellees defended their motion to punish Appellent for a filing in the trial court's docket with a finding of contempt notices as an act in furtherance of the temporary restraining order they secured on May 13, 2014. Lastly, opposing counsel judicially admitted at the July 17, 2014 hearing that a TCPA stay becomes effective once a trial court signs the order denying dismissal. At the trial proceeding on December 8, 2014 conducted over Appellant's objection, Appellees maintained that the conditions precedent for stay relief had not been not met, and that Appellant violated discovery rules by invoking the TCPA automatic stay prior to the expiration of time to comply with the discovery request. On each of these three occasions, the sole purpose for the role reversing conduct was to replace the special warranty deed that Appellee Bravenec acquired in 2006 with a general warranty deed, without compensating purchase money interests.

## CONCLUSION AND PRAYER

For the reasons explained above, Appellant respectfully prays that the Court reverse the denial of his motion to dismiss and render judgment dismissing plaintiffs' claims with prejudice toward all actions taken in violation state automatic stay laws. The temporary injunction order is erroneous on the merits, moot for purposes of appeal and is arguably unconstitutional under the Open Courts Doctrine with respect to its application of the interlocutory appeal statute. Further, the preponderant evidence shows that Appellees' lawsuit is "based on, relates to, or is in response to" Appellant's exercise of the right of free speech and petition. A diligent search for authority on points reveals few cases involving role reversals and vexatious attorney conduct of the nature and extent that is documented in this case. *Amalfitano v Rosenberg*, 428 F Supp 2d

53

196 (S.D. .N.Y., 2006), *Amalfitano v Rosenberg,* 533 F3d 117, 125 (2d Cir., 2008), and *Amalfitano v Rosenberg*, 12 NY3d 8 (N.Y. App., 2009).

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief in all things, for such other relief both in law and in equity as he may be justly entitled.

Dated: January 5, 2015                              Respectfully Submitted,

_____
Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

## CERTIFICATE OF WORD COUNT COMPLIANCE

In compliance with TEX. R. APP. P. 9.4, relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this document including footnotes (excluding captions, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 14, 891.

Dated:  January 5, 2015

_____
Rowland J. Martin


## CERTIFICATE OF SERVICE

I, Rowland J. Martin, certify that a copy of this *"Appellant's Motion For Contempt And Motion For Reconsideration Of The Court's Order Denying Consolidation,"* will be submitted to Glenn Deadman. Torralba Properties will also be served through its Registered Agent, Carlos L. Torralba, at 1626 S.W. Military Drive San Antonio, TX 78221.

Dated:  January 5, 2015

_____
Rowland J. Martin

196 (S.D. .N.Y., 2006), *Amalfitano v Rosenberg*, 533 F3d 117, 125 (2d Cir., 2008), and *Amalfitano v Rosenberg*, 12 NY3d 8 (N.Y. App., 2009).

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief in all things, for such other relief both in law and in equity as he may be justly entitled.

Dated: January 5, 2015

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

## CERTIFICATE OF WORD COUNT COMPLIANCE

In compliance with TEX. R. APP. P. 9.4, relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this document including footnotes (excluding captions, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 14, 891.

Dated: January 5, 2015

Rowland J. Martin

## CERTIFICATE OF SERVICE

I, Rowland J. Martin, certify that a copy of this *"Appellant's Motion For Contempt And Motion For Reconsideration Of The Court's Order Denying Consolidation,"* will be submitted to Glenn Deadman. Torralba Properties will also be served through its Registered Agent, Carlos L. Torralba, at 1626 S.W. Military Drive San Antonio, TX 78221.

Dated: January 5, 2015

Rowland J. Martin